DORIS FELICIANO *v.* AUTOZONE, INC.
(AC 34379)

Gruendel, Alvord and Flynn, Js.

Argued February 4—officially released May 21, 2013

*Josephine Smalls Miller*, for the appellant (plaintiff).

*Emery K. Harlan*, pro hac vice, with whom was *Kristan Peters-Hamlin*, for the appellee (defendant).

*Opinion*

FLYNN, J. The plaintiff, Doris Feliciano, appeals from the trial court's grant of summary judgment in favor of the defendant, Autozone, Inc., on all five counts of the plaintiff's complaint alleging national origin discrimination, religious discrimination, sexual harassment, disability discrimination and race discrimination in

violation of the Connecticut Fair Employment Practices Act, General Statutes § 46a-51 et seq., specifically, General Statutes § 46a-60.[1] On appeal, the plaintiff claims that the court improperly rendered summary judgment because there existed genuine issues of material fact, which made the rendering of summary judgment inappropriate. We disagree and affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to the plaintiff's appeal. The plaintiff is a black female who was born in the U.S. Virgin Islands and practices the Rastafarian religion.[2] As part of her religion, she wears her hair in dreadlocks. The plaintiff was employed by the defendant, first as a sales clerk and later as a supervisor, for a few years before being transferred to the defendant's Bloomfield location (store). Michael Balboni became the manager of the store in 2005, while the plaintiff was a supervisor there. The defendant had a company wide customer loyalty reward card program in place for purchases made by customers. In May, 2007, the defendant's automatic loss prevention computer program flagged twenty transactions between April 28 and May 9, 2007, involving the

---

[1] General Statutes § 46a-60 provides in relevant part: "(a) It shall be a discriminatory practice in violation of this section: (1) For an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, gender identity or expression, marital status, national origin, ancestry, present or past history of mental disability, intellectual disability, learning disability or physical disability . . . ."

Although § 46a-60 (a) (1) was amended after the plaintiff's employment was terminated in 2007; see Public Acts 2011, No. 11-55, § 24; Public Acts 2011, No. 11-129, § 20; the changes are not relevant to this appeal. For convenience, we refer to the current revision of the statute.

[2] These undisputed facts are of some importance in light of the plaintiff's claim that she was discharged because of her manager's improper references to her race, nationality, religion and appearance in the workplace.

same customer loyalty card number. Nineteen of the twenty transactions were listed as being processed under the plaintiff's customer service representative number.

On May 16, 2007, the plaintiff was accused by the defendant of improperly using a customer loyalty reward card for her own use. Patricia Vasquez, a loss prevention specialist, was sent by the defendant to investigate the situation. Vasquez questioned the plaintiff in the presence of Erwin Ballou, a district manager of the defendant. At the interview, the plaintiff admitted that she signed into the cash register and left it signed in under her customer service representative number for other employees to use. The plaintiff further admitted that she was "wrong" for letting other employees work under her customer service representative number. Vasquez forwarded her report, including the plaintiff's statements, to the defendant's staff attorney, Timothy P. Harrison, in Tennessee. He was not acquainted with the plaintiff. Harrison recommended that the plaintiff's employment be terminated, and Azeem Sikandar, regional manager for the defendant, followed the recommendation by calling for the termination of the plaintiff's employment on the ground that she had violated the defendant's loss prevention policy. The plaintiff's employment was terminated on May 22, 2007. Additional facts regarding the plaintiff's employment at the store will be set forth as needed.

Following her termination, the plaintiff filed a timely complaint with the Connecticut commission on human rights and opportunities on July 27, 2007, within 180 days of the actions attributed to the defendant, and with the federal Equal Employment Opportunity Commission. The federal Equal Employment Opportunity Commission issued a notice of right to sue on April 7, 2009, and the Connecticut commission on human rights and opportunities released jurisdiction on April 14,

2009. On April 30, 2009, the plaintiff commenced this action in the trial court pursuant to the Connecticut Fair Employment Practices Act.

The defendant moved for summary judgment on all five counts of the plaintiff's complaint and, following oral argument by counsel, the court issued its memorandum of decision and entered its corresponding judgment on February 10, 2012, rendering summary judgment on all counts in favor of the defendant. This appeal by the plaintiff then followed.

On appeal, the plaintiff claims that the court erroneously rendered summary judgment on all five counts because there were genuine issues of material fact that could not be resolved at the pretrial stage. We will address the five counts of the plaintiff's complaint in three groups. First, we will address the plaintiff's claim of disability discrimination, next we will address the plaintiff's claim of sexual harassment, and last we will address the plaintiff's claims of national origin, religious and race discrimination.

We begin by setting forth our standard of review and the principles that guide our analysis for appeals from the rendering of summary judgment. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Rivers* v. *New Britain*, 288 Conn. 1, 10, 950 A.2d 1247 (2008).

"A material fact is a fact that will make a difference in the result of the case. . . . It is not enough for the moving party merely to assert the absence of any disputed factual issue; the moving party is required to bring forward . . . evidentiary facts, or substantial evidence outside the pleadings to show the absence of any material dispute. . . . The party opposing summary judgment must present a factual predicate for his argument to raise a genuine issue of fact. . . . Once raised, if it is not conclusively refuted by the moving party, a genuine issue of fact exists, and summary judgment is inappropriate." (Internal quotation marks omitted.) *Vollemans* v. *Wallingford*, 103 Conn. App. 188, 193, 928 A.2d 586 (2007), aff'd, 289 Conn. 57, 956 A.2d 579 (2008). "On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant [a] defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Rivers* v. *New Britain*, supra, 288 Conn. 10.

I

We first address the plaintiff's claim of disability discrimination. The following additional facts are relevant to this claim. In the plaintiff's complaint, she alleges that she injured her back, knee and foot during the second half of 2006. Specifically, the plaintiff claims that she suffers from chronic swelling in her left foot due to a work-related injury. The plaintiff further alleges that in late January or early February, 2007, she gave the defendant a doctor's note requesting a light duty accommodation because of her alleged physical disability, but Balboni denied her request. The plaintiff also claims that a coworker with a pacemaker was provided with a light duty accommodation. Finally, the plaintiff alleges that when she felt the need to sit or rest because

of pain from her alleged disability, Balboni would task her with additional work.

"In order to survive a motion for summary judgment on a reasonable accommodation claim, the plaintiff must produce enough evidence for a reasonable jury to find that (1) [s]he is disabled within the meaning of the [statute], (2) [s]he was able to perform the essential functions of the job with or without a reasonable accommodation, and (3) [the defendant], despite knowing of [the plaintiff's] disability, did not reasonably accommodate it. . . . If the employee has made such a prima facie showing, the burden shifts to the employer to show that such an accommodation would impose an undue hardship on its business." (Citations omitted; internal quotation marks omitted.) *Curry* v. *Allan S. Goodman, Inc.*, 286 Conn. 390, 415–16, 944 A.2d 925 (2008).

Although the plaintiff's complaint alleged foot, knee and back pain, the plaintiff's objection to the defendant's motion for summary judgment addressed only her foot injury. We will only address the plaintiff's disability discrimination claim with respect to her foot injury because "[w]here a claim is asserted . . . but thereafter receives only cursory attention . . . without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . These same principles apply to claims raised in the trial court." (Citation omitted; internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 266 Conn. 108, 120, 830 A.2d 1121 (2003).

The plaintiff failed to produce enough evidence for a reasonable jury to find that she was disabled within the meaning of § 46a-60. Accordingly, her reasonable accommodation disability discrimination claim cannot survive a motion for summary judgment. *Curry* v. *Allan*

*S. Goodman, Inc.,* supra, 286 Conn. 415–16. The defendant submitted an affidavit from Dr. Irving J. Buchbinder with its motion for summary judgment. Dr. Buchbinder is a podiatrist and the plaintiff was a former patient. He swore in relevant part: "Between September 18, 2006 and September 2, 2008, I treated [the plaintiff], who came to Community Health Services complaining of pain to the top of her left foot, which she claimed was caused by a car battery having fallen on her left foot in July 2006. . . . The last time [the plaintiff] came to my office for podiatric treatment was in September 2008, when she complained about an in-grown toe nail. However, she stated that it did not bother her enough to receive pain treatment. . . . Based on my review of [the plaintiff's] files and based on my treatment of her, I have come to the conclusion that [the plaintiff] does not have a permanent disability, nor does she have an impairment of a major life activity. . . . [The plaintiff's] foot injury of which she complained to me, and for which I examined her feet, clearly does not constitute a permanent disability." The plaintiff failed to submit any medical evidence of this alleged disability to raise a genuine issue of material fact.

"Courts in the Second Circuit have consistently held that when a plaintiff fails to offer any medical evidence substantiating the specific limitations to which [s]he claims [s]he is subject due to h[er] conditions, [s]he cannot establish that [s]he is disabled within the meaning of the [Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.]. . . . Because [the] [p]laintiff provides no evidence of h[er] disability beyond h[er] own testimony . . . from which the extent or duration of h[er] impairment or limitation may be discerned, and more is required in the Second Circuit, [the] [p]laintiff has failed to demonstrate [Americans with Disabilities Act] or [Connecticut Fair Employment Practices Act] disability, and summary judgment will enter on h[er]

[Connecticut Fair Employment Practices Act] claim." (Citations omitted; internal quotation marks omitted.) *Buotote* v. *Illinois Tool Works, Inc.*, 815 F. Sup. 2d 549, 557–58 (D. Conn. 2011); see also *Douglas* v. *Victor Capital Group*, 21 F. Sup. 2d 379, 392 (S.D.N.Y. 1998) ("[the plaintiff's] testimony as to the (alleged) limits on his ability to walk, without supporting medical testimony, simply is not sufficient to establish his prima facie case under the [Americans with Disabilities Act]"). Despite the fact that "the [Connecticut Fair Employment Practices Act's] definition of physical disability is broader than the [Americans with Disabilities Act's definition]"; *Beason* v. *United Technologies Corp.*, 337 F.3d 271, 278 (2d Cir. 2003); the plaintiff offered *no* medical evidence of her alleged disability.

We agree with the court that this kind of expert evidence, which was not proffered by the plaintiff, was necessary in order for this claim to survive the defendant's motion for summary judgment. The plaintiff did not produce any medical evidence from which a reasonable jury could find that she is disabled within the meaning of the Connecticut Fair Employment Practices Act. The plaintiff, therefore, cannot establish either temporary or permanent disability, which is needed to place her within the protected class of disabled persons. We reject the plaintiff's claim on appeal that her unsupported testimony that she was disabled creates any issue of material fact regarding her claim of disability discrimination. The plaintiff's reasonable accommodation disability discrimination claim, thus, fails to survive the defendant's motion for summary judgment. See *Maglietti* v. *Nicholson*, 517 F. Sup. 2d 624, 631 (D. Conn. 2007).

II

We next address the plaintiff's sexual harassment claim. The following additional facts are relevant to this

claim. In the plaintiff's complaint, she alleges that in February, 2007, "Balboni kept rubbing his body against [the] [p]laintiff's as he walked past her in the aisles even though there was plenty of room." The plaintiff further alleges that she told Balboni to stop or he would get in trouble. After the plaintiff requested that Balboni stop this behavior, he allegedly "retaliated against her by sending her a text message saying, 'you b[itc]h.' "

Section 46a-60 provides in relevant part: "(a) It shall be a discriminatory practice in violation of this section . . . (8) For an employer . . . to harass any employee . . . on the basis of sex or gender identity or expression. 'Sexual harassment' shall, for the purposes of this section, be defined as any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when (A) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (B) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (C) such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment . . . ."

Count three of the plaintiff's complaint is entitled "Connecticut Fair Employment Practices Act (Sexual Harassment)." After incorporating by reference the allegations of paragraphs one through twenty-one of count one of her complaint, the gravamen of count three of her complaint, paragraph twenty-two, reads as follows: "By its termination of [the] [p]laintiff's employment when similarly situated employees, who are not of the same religious belief as [the] [p]laintiff, were not terminated for the same offense, [the] [d]efendant has discriminated against [the] [p]laintiff based upon her

religion in violation of the Connecticut Fair Employment Practices Act." In its answer to the plaintiff's paragraph twenty-two, the defendant "denie[d] the allegations of [c]ount [t]hree, [paragraph twenty-two], and notes that the allegations of this paragraph make no reference to a violation of the Connecticut Fair Employment Practices Act on the grounds of Sexual Harassment." The plaintiff made no effort to amend count three accordingly.

"[I]t is well settled that [t]he failure to include a necessary allegation in a complaint precludes a recovery by the plaintiff under that complaint . . . . As a result, [i]t is incumbent on a plaintiff to allege some recognizable cause of action in h[er] complaint. . . . [I]f the complaint puts the defendant on notice of the relevant claims, then a plaintiff's failure specifically to allege a particular fact or issue is not fatal to h[er] claim unless it results in prejudice to the defendant." (Citations omitted; internal quotation marks omitted.) *Sturm* v. *Harb Development, LLC*, 298 Conn. 124, 130–31, 2 A.3d 859 (2010).

In its memorandum of decision, the trial court noted that "the plaintiff incorporated paragraph [twenty-two] of count two, alleging religious discrimination, as her concluding paragraph of count three (sexual harassment), which merely states that she was terminated based on discrimination against her because of her religion." The trial court also stated that the plaintiff failed to "specifically reference the sexual harassment provision of the [Connecticut Fair Employment Practices Act], General Statutes § 46a-60 (a) (8) . . . ." The trial court then "assume[d] [the plaintiff's] intention was to rely on that provision in making a claim of sexual harassment." The assumptions did not stop there. The trial court further assumed that out of the three alternative definitions of sexual harassment under § 46a-60 (a) (8), "the plaintiff's sexual harassment claim fits most

logically into the category of a claim of 'hostile or offensive work environment.' " The trial court then analyzed the defendant's motion for summary judgment as to the sexual harassment claim in this framework.

Although, if we were to make similar assumptions, we would not disagree with the court's analysis on the merits of the motion for summary judgment regarding the plaintiff's sexual harassment claim, we do not think that the court should have engaged in such analysis. Practice Book § 10-3 states in relevant part: "(a) When any claim made in a complaint . . . is grounded on a statute, the statute shall be specifically identified by its number. . . ." "[A]lthough a plaintiff should plead a statute in a complaint . . . failing to do so will not necessarily bar recovery as long as the [defendant is] *sufficiently apprised* of the applicable statute during the course of the proceedings." (Emphasis in original.) *Spears* v. *Garcia*, 66 Conn. App. 669, 676, 785 A.2d 1181 (2001), aff'd, 263 Conn. 22, 818 A.2d 37 (2003). It is not apparent from an examination of the third count of the plaintiff's complaint or her opposition to the defendant's motion for summary judgment what type of sexual harassment she was alleging. The plaintiff's sexual harassment claim, although incorporating by reference two paragraphs detailing the allegations of Balboni's improper conduct with the plaintiff, including his text message, fails to allege that this conduct was sexual harassment under § 46a-60 (a) (8) or any other enumerated statute. The plaintiff also fails to specify which sexual harassment definition she was attempting to allege, namely, whether Balboni's conduct was alleged to fall under subparagraph (A), (B) or (C) of § 46a-60 (a) (8). The defendant was not on notice of the statutory basis for the plaintiff's claim. See *Brewster Park, LLC* v. *Berger*, 126 Conn. App. 630, 636, 14 A.3d 334 (2011). Even if this were a scrivener's error, as the trial court states, the plaintiff was put on notice by the defendant's

answer that the plaintiff's complaint failed to make any reference to a violation of the Connecticut Fair Employment Practices Act on the ground of sexual harassment. We do not assume, as did the trial court, what the plaintiff did not plead, namely, that the plaintiff was alleging a "hostile or offensive working environment" claim of sexual harassment under § 46a-60 (a) (8) (C).

The plaintiff failed to include necessary allegations in her sexual harassment claim, which consequently precludes her recovery for sexual harassment under this count. *Sturm* v. *Harb Development, LLC*, supra, 298 Conn. 130–31. The plaintiff failed to allege a recognizable cause of action for statutorily defined sexual harassment in violation of the Connecticut Fair Employment Practices Act. The defendant, therefore, was entitled to summary judgment on the plaintiff's sexual harassment claim.

### III

Finally, we address the plaintiff's separately pleaded claims of national origin, religious and race discrimination, pleaded in counts one, two and five of the plaintiff's complaint, respectively. The following additional facts are relevant to this claim. In the plaintiff's complaint she alleges that "Balboni began to harass [the] [p]laintiff on a daily basis, in part because of her national origin. Balboni incorrectly believed that [the] [p]laintiff was from Jamaica because of her accent. Balboni called [the] [p]laintiff a 'f*****g Jamaican.'" She further alleges that with regard to her dreadlocks, "Balboni constantly made comments about the way that [the] [p]laintiff looked, including asking her what was wrong with her hair and why did she do that to herself. Balboni asked [the] [p]laintiff whether she washed her hair, implying that she was not a clean person." The plaintiff also alleges that "Balboni gave [her] menial jobs to perform and therefore treated her differently than the

other supervisors who were not Rastafarian and not from the Virgin Islands." Finally, the plaintiff alleges that "[o]n or about April 2007 [the] [p]laintiff learned that Balboni had been ridiculing her by wearing a dreadlocks wig and saying 'I'm (Balboni) a Rastafarian. Watch me because I steal.' . . . Balboni ridiculed [the] [p]laintiff in front of other employees by placing the dreadlocks wig on his head, telling [the] [p]laintiff that this was how she looked. [The] [p]laintiff took a photograph of Balboni wearing the wig with her cell phone." Finally, the plaintiff alleges that her termination was discriminatory because it was based on her national origin, religion and/or race.

"The framework this court employs in assessing disparate treatment discrimination claims under Connecticut law was adapted from the United States Supreme Court's decision in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and its progeny." *Lyon* v. *Jones*, 291 Conn. 384, 406–407, 968 A.2d 416 (2009). "We look to federal law for guidance on interpreting state employment discrimination law, and the analysis is the same under both. *State* v. *Commission on Human Rights & Opportunities*, 211 Conn. 464, 469–70, 559 A.2d 1120 (1989)." *Craine* v. *Trinity College*, 259 Conn. 625, 637 n.6, 791 A.2d 518 (2002). "Under this analysis, the employee must first make a prima facie case of discrimination." Id., 637. In order for the employee to first make a prima facie case of discrimination, the plaintiff must show: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position; (3) the plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination. See *McDonnell Douglas Corp.* v. *Green*, supra, 802. "The employer may then rebut the prima facie case by stating a legitimate, nondiscriminatory justification for the employment decision in question." *Craine* v. *Trinity College*,

supra, 637. "This burden is one of production, not persuasion; it can involve no credibility assessment." (Internal quotation marks omitted.) *Board of Education* v. *Commission on Human Rights & Opportunities*, 266 Conn. 492, 506, 832 A.2d 660 (2003). "The employee then must demonstrate that the reason proffered by the employer is merely a pretext and that the decision actually was motivated by illegal discriminatory bias." *Craine* v. *Trinity College*, supra, 637.

The court concluded that "because the plaintiff has failed to present any evidence to support her claim that the circumstances of her termination give rise to an inference of discrimination, she has failed to make out a prima facie case as to her claims of national origin, religious and race discrimination. Based on the evidence submitted by the parties, no rational fact finder could determine that discriminatory animus fueled the defendant's decision to terminate the plaintiff. Accordingly, the motion for summary judgment as to count one, two and five must be granted. . . . [T]he defendant is entitled to summary judgment on all counts of the plaintiff's complaint as a matter of law."

Viewing the evidence in the light most favorable to the plaintiff, there are no genuine issues of material fact as to her satisfaction of the first three prongs for a prima facie case for national origin, religion and race discrimination. The plaintiff identifies herself as a black female who practices the Rastafarian religion and the defendant admits the same. The defendant also admits to the plaintiff's allegation that she was born in the U.S. Virgin Islands, but the plaintiff alleges that Balboni perceived her as Jamaican. Being black, Rastafarian and perceived Jamaican are all protected classes in satisfaction of prong one. Neither party disputes that the plaintiff was qualified for her position, such that prong two is not at issue. There is also no dispute that the plaintiff suffered an adverse employment action,

as is required by prong three, by being terminated by the defendant.

In order to survive the defendant's motion for summary judgment, there must be a genuine issue of material fact as to the remaining fourth prong required for a prima facie case of discrimination, namely, whether the plaintiff's termination occurred under circumstances that give rise to an inference of discrimination.

The original loss prevention inquiry was triggered by the defendant's automated computer program, which was not targeted at the plaintiff specifically, but designed to reveal any suspicious activity in connection with its customer loyalty reward card program, which rewards customers based on the amount spent at the defendant's retail locations. That computer program revealed suspicious activity associated with a particular customer loyalty reward card number and the plaintiff's customer service representative number. The defendant investigated this activity by sending a loss prevention specialist, Vasquez, to meet with the plaintiff in the presence of Ballou. The plaintiff admitted to Vasquez and Ballou that she signed into the cash register with her customer service representative number, left herself signed in on the cash register for other employees to use and did not log out of the cash register before leaving the immediate area. The plaintiff offered these admissions as an explanation as to why multiple transactions were assigned to the single customer loyalty reward card under her customer service representative number.[3] Vasquez forwarded her report, which included the plaintiff's admission of wrongdoing, in leaving the cash register unattended while it was still logged in under her customer service representative number in

---

[3] Allowing other employees to use the cash register while logged in under the plaintiff's customer service representative number and leaving the cash register unattended while still logged in under this number are violations of the defendant's loss prevention policy.

violation of company policy, to the defendant's staff attorney, Harrison, in Tennessee. Harrison did not know the plaintiff. After Harrison reviewed Vasquez' report, he recommended termination of the plaintiff. Sikandar, the regional manager, followed this recommendation. Sikandar was the final decision maker.

The computer program, Vasquez, Ballou, Harrison and Sikandar were involved in the investigation that eventually led to the termination of the plaintiff. The plaintiff's claims, however, involve the actions and statements of Balboni. "Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus. [The plaintiff] must demonstrate [that] a nexus exists between these allegedly discriminatory statements and the [defendant's] decision to terminate her." (Internal quotation marks omitted.) *Orisek* v. *American Institute of Aeronautics & Astronautics*, 938 F. Sup. 185, 192 (S.D.N.Y. 1996), aff'd, 162 F.3d 1148 (2d Cir. 1998), cert. denied, 526 U.S. 1065, 119 S. Ct. 1456, 143 L. Ed. 2d 542 (1999). The defendant produced affidavits of Harrison, Sikandar, Balboni and Vasquez, all swearing that Balboni had no input into the investigation or discipline of the plaintiff. Particularly, Vasquez swore that it is the defendant's common procedure to remove store managers from loss prevention investigations and resulting discipline, and such a procedure was followed here. The plaintiff, however, has failed to produce any countervailing evidence connecting Balboni's allegedly discriminatory actions and statements with the defendant's decision to terminate her. The plaintiff has not produced countervailing evidence showing that Balboni participated in the investigation that led to her termination or in the actual discipline decision. The plaintiff has produced no countervailing evidence that the defendant's investigator and decision makers, Vasquez, Harrison, or Sikandar, consulted with

Balboni in the process of investigating or terminating the plaintiff.

"[An adverse employment decision] is only actionable if the employer harbors a discriminatory animus and that animus is one of the causes of the adverse action taken against the employee." *Diamantopulos* v. *Brookside Corp.*, 683 F. Sup. 322, 327 (D. Conn. 1988). The plaintiff originally was identified by the defendant's automated computer program by her customer service representative number. The program was run as to all of the defendant's store locations in the New York region, which included this store. Being selected by such an automated computer program is not a circumstance giving rise to the inference of discrimination. Such an automated computer program does not equate with harboring discriminatory animus. Additionally, the plaintiff does not allege that Vasquez, Ballou or Harrison harbored discriminatory animus toward her.

The only remaining actor in the termination decision is the ultimate decision maker, Sikandar. In order to survive summary judgment, there must be a genuine issue of material fact regarding the circumstances surrounding Sikandar's decision to terminate the plaintiff. The plaintiff alleged that Sikandar made a false statement that he was not aware of the plaintiff's protected status when he decided to terminate her because the plaintiff claims that she met him before. Sikandar, in his affidavit, swore that he "was not aware of [the plaintiff's] race, religion, ethnicity, national origin or religion, as they were irrelevant . . . . I made the decision solely and exclusively based on the fact that [the plaintiff] admitted to cash register misconduct and to violation of the loss prevention policy."

Although this is a dispute as to whether Sikandar ever met the plaintiff and, thus, was aware of her protected status, it does not rise to a dispute regarding a material fact. First, the plaintiff never alleges that Sikandar was

motivated by such knowledge and thus that he acted with discriminatory animus. Furthermore, Harrison stated in his affidavit that "approximately 99 percent of the time the [r]egional [m]anager follows the recommendation that the staff attorneys make." The plaintiff does not offer any evidence to challenge Harrison's statement. The plaintiff fails to raise an issue of material fact as to whether Sikandar terminated the plaintiff for a discriminatory reason and not upon Harrison's recommendation. Last, the plaintiff fails to produce any evidence to contravene the defendant's evidence that it consistently terminates employees for similar misconduct to that admittedly committed by the plaintiff. "Unless the plaintiffs can show that the defendants' explanations are inherently suspect or can present other direct or circumstantial evidence suggesting that the proffered reasons are not true, then the defendants are entitled to summary judgment." (Internal quotation marks omitted.) *Perez-Dickson* v. *Bridgeport*, 304 Conn. 483, 518 n.35, 43 A.3d 69 (2012).

The plaintiff fails to present a factual predicate for her argument and thus fails to raise a genuine issue of material fact as to the existence of circumstances surrounding her termination that give rise to an inference of discrimination. There is no genuine issue as to the fourth prong required for a prima facie claim of discrimination. The plaintiff, therefore, cannot prove a prima facie case of discrimination under *McDonnell Douglas Corp.* and its progeny. Consequently, the defendant is entitled to summary judgment as to the plaintiff's claims of national origin, religious and race discrimination.[4]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] We should note, however, that although the plaintiff has failed to raise a genuine issue of material fact as to the existence of circumstances surrounding her termination that give rise to an inference of discrimination, we do not condone the alleged actions of Balboni.