SMITH COLLEGE & others[1] vs. MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION.

Hampshire. April 3, 1978. — August 25, 1978.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & LIACOS, JJ.

*Massachusetts Commission Against Discrimination. Anti-Discrimination Law,* Tenure, Prima facie case, Burden of proof.

In a proceeding before the Massachusetts Commission Against Discrimination, the complainants, two female college instructors who had been denied tenure, were required to prove that there were no independent, nondiscriminatory reasons for the denial. [226–227]

In a proceeding before the Massachusetts Commission Against Discrimination, the commission erred in failing to require the complainants, two female college instructors who had been denied tenure, to prove that the college officials had a discriminatory motive in denying them tenure. [227–228]

In a proceeding before the Massachusetts Commission Against Discrimination, evidence of sex discrimination prior to July 24, 1969, the effective date of G. L. c. 151B, could not be relied on to support an inference of actual discrimination in 1971 and 1972, when the actions from which the complaints arose occurred. [228–229]

Where a complainant in a proceeding before the Massachusetts Commission Against Discrimination proves a prima facie case of unlawful discrimination, the burden is shifted to the respondent to produce a lawful explanation for the treatment accorded the complainant; if, however, the reason given for the respondent's action is the

---

[1] Other plaintiffs, who were named respondents in each complaint filed with the Massachusetts Commission Against Discrimination, are the then president of the college, Thomas C. Mendenhall, and six tenured male professors in the English department, Kenneth Connely, Robert Petersson, Vernon Harward, Paul Pickrel, Frank Ellis, and Harold Skulsky. The Adams complaint also named Professor Francis Murphy who is not a plaintiff. The Carruthers complaint named Professor Richard Young who is. There is no difference in the position taken by the various plaintiffs and often we shall refer to their collective arguments as those of Smith.

real reason and is nondiscriminatory, the commission has no authority to grant relief from that action. [229]

CIVIL ACTION commenced in the Superior Court on January 29, 1975.

The case was heard by *Hayer, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*Barbara J. Rouse,* Assistant Attorney General (*Robert H. Bohn, Jr.,* Assistant Attorney General, with her) for the defendant.

*Edward B. Hanify* (*Stephen B. Perlman, Eleanor D. Acheson & H. Reed Witherby* with him) for the plaintiffs.

*Nancy Gertner & Betty Gittes,* for Civil Liberties Union of Massachusetts, amicus curiae, submitted a brief.

WILKINS, J. In April, 1972, Maurianne Adams and Mary Carruthers,[2] then assistant professors of English at Smith College (Smith), a private liberal arts college for women, each filed a complaint with the Massachusetts Commission Against Discrimination (MCAD) alleging unlawful discrimination in that she had not been recommended for tenure because of her sex. G. L. c. 151B, § 4. The result of these adverse tenure decisions was that Smith did not renew their teaching contracts which expired at the end of the 1972-1973 academic year.

Proceedings based on these complaints have followed a lethargic course, which might attract the attention of a modern Charles Dickens. A hearing on the complaints was held before a single commissioner of the MCAD on twelve days between January 16 and May 16, 1973. On December 30, 1974 (more than nineteen months after the close of the hearing), the single commissioner filed findings of fact and conclusions of law ruling in favor of Adams and Carruthers and ordering their reinstatement with tenure at the higher rank of associate professor and

---

[2] Carruthers's complaint was filed in the name of Mary C. Schroeder. She has changed her name to Mary Carruthers.

with back pay.[3] Almost a year later, on November 19, 1975, the full commission, acting on Smith's administrative appeal, affirmed the decision of the single commissioner with minor modifications. Smith then filed a petition for review. A judge of the Superior Court heard the case in the spring of 1977,[4] and, on July 18, 1977, he ruled in favor of Smith and directed the MCAD to dismiss the complaints with prejudice. We granted the parties' joint application for direct appellate review.

The delay in the resolution of these complaints is particularly unfortunate because we conclude that the proceedings must be returned to the MCAD for further consideration. Although the single commissioner made certain errors in her decision which were not corrected by the full commission, we do not agree with the judge that the complaints should be dismissed without affording the MCAD the opportunity to reconsider the evidence (and, in its discretion, to receive any additional evidence) and to make findings under proper legal standards.

---

[3] The single commissioner also entered certain orders, which were modified and affirmed by the full commission, concerning the class action aspects of the complaints. In *Massachusetts Elec. Co.* v. *Massachusetts Comm'n Against Discrimination*, 375 Mass. 160, 176-177 (1978), we concluded that G. L. c. 151B gave the MCAD no express power to permit matters before it to proceed as class actions and that the MCAD had issued no rule authorizing class actions. For reasons stated in that opinion, it was improper for the MCAD to order retroactive class relief here. For reasons we shall explain, the proceedings must be remanded to the MCAD. On remand, the MCAD should consider the complaints only as to Adams and Carruthers. As part of any order, however, the MCAD may require Smith "to cease and desist from [any] unlawful practice" and to take certain affirmative steps which, as a practical matter, may benefit more than just the complainants before the MCAD. G. L. c. 151B, § 5. Because of the passage of time in this case, it may be appropriate to receive evidence of Smith's current practices if the MCAD contemplates the issuance of an order for such prospective, affirmative relief.

[4] By agreement, the MCAD did not file an answer until February, 1976. In February, 1977, after the MCAD filed a motion for summary judgment, the plaintiffs filed a motion for a speedy trial with the MCAD's assent. We are unable on this record to account for the delay in the presentation of the case to a judge of the Superior Court.

Our function is to review the decision of the MCAD in accordance with the standards of review expressed in G. L. c. 30A, § 14. G. L. c. 151B, § 6. The conclusions of the Superior Court judge carry no special weight in our deliberations, although they will, of course, be considered. *Wheelock College* v. *Massachusetts Comm'n Against Discrimination,* 371 Mass. 130, 132-133 (1976). Courts must defer to an administrative agency's fact-finding role, including its right to draw reasonable inferences from the facts found. *Id.* Although the trial judge recognized the guiding legal principles, he failed to adhere to them in some respects. In a number of instances, he appears to have weighed the evidence and reached his own conclusions on the facts. The temptation to do so is great where the record contains substantial factual support for a result not reached by the agency, and where the agency decision contains seemingly prejudicial factual errors[5] and lacks a balanced analysis of the evidence.[6]

Our focus must be on the action of the agency, and we must, therefore, disregard factual conclusions advanced for the first time in the MCAD's brief here and must view

[5] The single commissioner's findings understated the number of women holding professorial rank and the number of women having tenure in the English department. The single commissioner's statement that there was an historical absence of women in prestigious positions at Smith is not supported by the evidence. Of the full-time faculty members in 1970-1971, 36% were women, and 41% of the faculty members on various committees were women. Women had served as head of the board of trustees for more than thirty years, and ten of the seventeen board members were women.

[6] The single commissioner found that Smith pursued a "word-of-mouth recruitment policy," but she did not discuss evidence that that informal method of recruitment was only one of the means of seeking new faculty. The single member, without specification, also found discrimination against women in "off-campus social relations" which shut out women faculty members of the English department, but she gave no attention to considerable evidence from women faculty members in the English department that they neither observed nor experienced such a practice. Nor did the single member find any correlation between the existence of "off-campus social relations" and favorable tenure decisions.

critically any legal theory now claimed to be supportive of the agency decision which was not part of the reasoning expressed in the MCAD's decision. In the circumstances of this case, we deal with the findings of fact made by the single commissioner and with her ultimate conclusions and rulings, as the latter were modified by the full commission.[7]

Adams was appointed an instructor in English at Smith in 1964, after an outstanding record as a student. In 1967, after receiving her doctoral degree, she was promoted to the rank of assistant professor in the English department. In 1970, she was given a three-year contract as an assistant professor. In the late winter of 1972, the English department, acting through its available tenured members, voted, seven-to-one, not to recommend Adams for tenure. The recommendations against tenure were made by men, and the sole recommendation for tenure was made by a woman.

Carruthers also was appointed an instructor in English at Smith in 1964, following a distinguished record as a student. She received a master's degree and a doctoral degree from Yale in 1965, and was promoted to the rank of assistant professor. After annual renewals, she re-

[7] As authorized by G. L. c. 151B, § 3(6), the chairman of the MCAD appointed a single commissioner to hold a public hearing. The single commissioner did so, made findings, and reached certain conclusions. Smith was aggrieved by the decision of the single commissioner and, pursuant to G. L. c. 151B, § 3(6), sought review by the full commission. Smith's appeal did not seek a rehearing before the full commission. Thus the function of the full commission was to review the record before the single commissioner. Although a portion of the full commission's decision is headed, "Additional Subsidiary Findings of Fact," the discussion under that heading contains no such additional findings, but rather sets forth reasons in support of the single commissioner's findings. The full commission's review properly involved decisions on questions of law, including whether substantial evidence supported the single commissioner's findings. The full commission may reach different ultimate conclusions and apply principles of law different from those of a single commissioner but may not disregard basic factual findings of a single commissioner which are supported in the record.

ceived a three-year contract covering the academic years 1970-1973. In the fall of 1971, she was advised that the English department would not recommend tenure for her and that her contract would not be renewed. The department's recommendation was unanimous, with seven men and one woman voting.

The procedures in effect at Smith concerning tenure required recommendations concerning tenure from senior tenured members of the department in which the concerned individual taught. Each departmental recommendation was presented to a committee on tenure and promotion, consisting of five tenured faculty members, the dean, and the president of the college. The committee's function was to review departmental tenure recommendations and to make its own assessment and recommendation to the college's board of trustees concerning tenure or promotion. The board of trustees has traditionally accepted the recommendations of the committee on tenure and promotion, but that committee has not always followed a department's recommendation. Although it seems that great weight was given to a department's recommendation, the committee made its own analysis of a tenure question. One man on the committee voted in favor of tenure for Adams. All other votes were against tenure. The woman on the committee voted against tenure for both. The president, who votes only in the case of a tie, did not vote.

In the cases of Adams and Carruthers, there is no evidence that the committee was influenced by considerations of sex, except as sex may have been a factor in the votes of individual members of the English department which led to that department's negative recommendations. The MCAD should have given greater attention than it did to the question whether sex was a determinative cause for Smith's decisions to deny tenure. If the decision of the committee on tenure and promotion as to either Adams or Carruthers in any event would have been negative despite her sex, that complainant failed to

prove her case.[8] No doubt, an adverse departmental recommendation influenced by unlawful sex discrimination would make a favorable tenure decision by the committee less likely. On remand, any analysis of the decision of the committee must concentrate on whether the complainants proved that there were no independent, nondiscriminatory reasons for the committee's adverse determination. *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 130, 136-137 (1976).

The single commissioner failed to recognize that, in cases involving disparate treatment of employees, proof of discriminatory motive is critical. See *International Bhd. of Teamsters* v. *United States*, 431 U.S. 324, 335 n.15 (1977); *Sweeney* v. *Trustees of Keene State College*, 569 F.2d 169, 174 (1st Cir. 1978). The parties have treated these complaints as alleging "disparate treatment" rather than "disparate impact." A case of disparate impact involves facially neutral practices which fall more harshly on one group than another. In such a case, discriminatory motive is not an essential part of the proof. See *International Bhd. of Teamsters* v. *United States, supra.* The full commission did not rectify the single commissioner's failure to focus on discriminatory motive, and, in fact, may have perpetuated that error. It is not surprising that, in this academic environment, there was no direct evidence of discrimination against either Adams or Carruthers individually on the basis of sex. For example, there was no substantial evidence that any member of the

---

[8] If a complainant proves that the tenure decision would have been favorable but for the unlawful discrimination, she has proved her case. See *McDonald* v. *Santa Fe Trail Transp. Co.*, 427 U.S. 273, 282 n.10 (1976); *Barnes* v. *Costle*, 561 F.2d 983, 990 (D.C. Cir. 1977); *Mack* v. *Cape Elizabeth School Bd.*, 553 F.2d 720, 722 (1st Cir. 1977); *Rogers* v. *Equal Employment Opportunity Comm'n*, 551 F.2d 456, 457 (D.C. Cir. 1977). If, however, an employer discriminates on the basis of sex but the complainant would not have been hired even if he or she had been a member of the opposite sex, a complainant has not proved a case of discrimination under G. L. c. 151B, § 4.

English department expressed, or admittedly applied, a
stricter standard for women than for men in deciding
tenure questions. However, although the fact of dis-
criminatory motive must be proved, it can be inferred
from differences in the treatment of two groups.[9] If a
finding of discriminatory motive, based on disparate
treatment between men and women in tenure decisions,
is to be supported on this record, it will have to be based
on reasonable inferences drawn from comparisons for
which the decision of the single commissioner does not
provide the necessary findings. See *School Comm. of Chi-
copee* v. *Massachusetts Comm'n Against Discrimination*,
361 Mass. 352, 354-355 (1972).

The single commissioner failed to consider the fact that
Smith first became subject to G. L. c. 151B on July 24,
1969. St. 1969, c. 216. Evidence of sex discrimination prior
to that date, although perhaps relevant to prove a preex-
isting and continuing pattern of discrimination, must be
considered carefully if it is to be used as a basis for a
finding of discrimination after that date. See *Hazelwood
School Dist.* v. *United States*, 433 U.S. 299, 309-310 (1977).
The full commission recognized the single commis-
sioner's error of law and corrected her order, to limit
retroactive relief to events occurring on and after July 24,
1969, but the full commission failed to recognize the past
patterns of discrimination, which before 1969 allegedly
overloaded the tenured professorial ranks in the English
department with men, could not be relied on to support

---

[9] In a proper case, gross statistical disparities alone may constitute
prima facie proof of a practice of discrimination. *Hazelwood School
Dist.* v. *United States*, 433 U.S. 299, 307-308 (1977). But they are not
irrefutable. *International Bhd. of Teamsters* v. *United States*, 431 U.S.
324, 340 (1977). And, of course, statistics might be probative on the
question of motive to show the absence of discrimination. *Furnco
Constr. Corp.* v. *Waters*, 438 U.S. 567, 579 (1978). *Springfield Bd. of
Police Comm'rs* v. *Massachusetts Comm'n Against Discrimination*, 375
Mass. 782, 783 (1978). Additionally, evidence of specific acts of dis-
crimination may support an inference of discriminatory motive. See
*International Bhd. of Teamsters* v. *United States*, supra at 338.

an inference of actual discrimination in 1971 and 1972, at a time when the proportion of women in the lower ranks in the English department seems unexceptionable for the purposes of this case.[10] See *Hazelwood School Dist.* v. *United States, supra* at 309-310; *Pace College* v. *Commission on Human Rights of the City of N.Y.*, 38 N.Y.2d 28, 38 (1975).

The full commission appears to have treated this case as one in which the complainants established a prima facie case of sex discrimination which the respondents failed to rebut. The single commissioner's diffuse discussion seems to accept the same view. The concept of a prima facie case and the shifting of the burden of going forward to rebut the prima facie case was expressed in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973), and amplified by us in *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 130 (1976). If a complainant proves a prima facie case of unlawful discrimination, the burden is then shifted to the respondent to produce a lawful explanation for the treatment accorded the complainant. *Id.* at 138. That explanation must consist of not only a nondiscriminatory reason for the respondent's action but also credible evidence indicating that the reasons advanced were the real reasons. *Id.* The fact finder has a particularly delicate function. The managerial decision may be unsound or even absurd, but, if the reason given for the decision is the real reason and is nondiscriminatory, the MCAD has no authority to grant relief from that decision.

---

[10] The single commissioner found that, in the 1971-1972 academic year, 57% (4 of 7) of the assistant professors in the English department were women, and 33% (2 of 6) of the associate professors were women. As a whole, in that academic year, 30% of the faculty in the English department were women. Evidence introduced by the complainants showed that the proportion of women receiving doctorates in English Language and Literature from United States universities declined from 30% in 1930-1934 to 17.2% in 1955-1959.

We will assume for the purposes of our further discussion that the complainants may be able to establish a prima facie case of sex discrimination in the record in this proceeding. The essential elements of a prima facie case necessarily vary depending on the job involved and the decision to be made. The decisions of the single commissioner and of the full commission did not adequately set forth the essential elements of a prima facie case as applied to a college tenure decision. On remand, the MCAD will have to define those elements and then determine whether the complainants have proved such a case.

If a prima facie case is made out, the MCAD will next have to consider Smith's stated reason for its decision to deny tenure and whether that reason was the real reason for denying tenure, or merely a pretext. *Wheelock College v. Massachusetts Comm'n Against Discrimination, supra* at 138-139. Smith's stated reason is that the complainants were not qualified for tenure. This is a nondiscriminatory reason. Indeed, the fact of qualification for a position is an essential part of any complainant's prima facie case. Thus, the complainants have the burden of proving their qualifications and the further burden of proving that the reason advanced and supported for denying tenure was not the real reason.

Despite judicial reluctance to second guess tenure decisions at the college level,[11] we reject Smith's argument that the MCAD should not become involved in such matters where unlawful discrimination is alleged. If Smith's argument were accepted, unlawful discrimination in college tenure decisions may never be the subject of redress. See *Johnson* v. *University of Pittsburgh,* 435 F. Supp. 1328, 1354-1355 (W.D. Pa. 1977). Although the MCAD

---

[11] Opinions advancing a "hands off" policy concerning tenure questions in colleges and universities are cited, discussed, and questioned in *Sweeney* v. *Trustees of Keene State College,* 569 F.2d 169, 175-176 (1st Cir. 1978). "[W]e caution against permitting judicial deference to result in judicial abdication of a responsibility entrusted to the courts." *Id.* at 176.

may lack expertise in assessing the qualifications of academic personnel, it can assess the evidence before it, like any ony other fact finder, including the opinions of experts who testify concerning a complainant's qualifications.

Although many of the standards for a tenure decision are necessarily subjective, they are not fairly assailable as suspiciously vague. However, the opportunity for unlawful bias is particularly great in such cases. A most detailed and careful analysis of the facts is required to assess whether a complainant proved that he or she was qualified for tenure.[12] The single commissioner and the full commission did not fulfil this obligation. Their decisions did not face up fully to the evidence that neither Adams nor Carruthers was an adequate lecturer and that neither had produced acceptable written scholarship. Disbelief of testimony that the complainants were not qualified does not produce substantial evidence that they were. *Cohen* v. *Board of Registration in Pharmacy*, 350 Mass. 246, 251-252 (1966). The facts that each complainant had been hired and had had her contract renewed supported but did not prove her qualification for tenure. In its further consideration of this matter, the MCAD will have to deal with the question whether each complainant

---

[12] The views of Judge Campbell, concurring in *Sweeney* v. *Trustees of Keene State College*, 569 F.2d 169, 180 (1st Cir. 1978), are relevant here. After indorsing the use of a scalpel and not a sword in finding facts "in cases of this delicate nature," he noted "the need for the most objective, sensitive fact-finding humanly possible. Fact-finding biased in either direction can lead to socially harmful results: harm to the woman who is discriminated against without redress; harm, on the other hand, to a university and its students, and to more qualified applicants, if a lifetime job or promotion is conferred by the court upon a woman who would have been passed over had she been a male. . . . It behooves us to make clear that Title VII requires courts to be unflinching in upholding *both* the rights of the victims of sex discrimination *and* the right of universities and other employers to make sex blind discretionary decisions — even if a woman sometimes loses out. *See, e.g., Hochstadt* v. *Worcester Foundation for Experimental Biology*, 545 F.2d 222 (1st Cir. 1976)."

met her burden of proving that on balance she was qualified for tenure.

An even more difficult task for the MCAD will be to determine whether the nondiscriminatory reason given —lack of qualification—was the real one. The departmental tenure recommendations were made by eight people. If those voting against tenure (or only perhaps a majority of them) truly believed that Adams and Carruthers did not qualify for tenure, that may end the case. If it is the real reason for the decision, a nondiscriminatory, even though irrational, employment decision cannot be the ground for relief from the MCAD. The decisions of the single commissioner and the full commission, although without sufficient factual analysis, considered only the first step: the qualifications of Adams and Carruthers for for tenure. Those decisions did not recognize, as they should have, that a sincere belief that a person is not qualified for a job is an adequate justification for an employment decision and rebuts a complainant's prima facie case. In any subsequent decision which finds the reasons given for denying tenure to be a pretext, the MCAD, or a single commissioner, must give careful attention to the testimony of various English professors that they voted against tenure solely because in their opinions Adams and Carruthers lacked the necessary qualifications for tenure. In order to justify relief to the complainants, these reasons must be found to be a pretext.

The judgment of the Superior Court is reversed, and judgment shall be entered remanding the proceedings to the MCAD for action not inconsistent with this opinion.

*So ordered.*