******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DORIS FELICIANO *v.* AUTOZONE, INC.
(SC 19200)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued December 1, 2014—officially released March 31, 2015*

*Josephine Smalls Miller*, for the appellant (plaintiff).

*Emery K. Harlan*, pro hac vice, with whom were *Proloy K. Das* and, on the brief, *Andrew L. Houlding*, for the appellee (defendant).

*Opinion*

ROGERS, C. J. The issue in this certified appeal is whether the Appellate Court properly affirmed the trial court's summary judgment rendered in favor of the defendant, Autozone, Inc., on the claims of unlawful discrimination on the basis of national origin, religion, sex, disability and race filed by the plaintiff, Doris Feliciano. The plaintiff brought this action pursuant to the Connecticut Fair Employment Practices Act, General Statutes § 46a-51 et seq., alleging that the defendant, her employer, had engaged in disability discrimination and sexual harassment, and had unlawfully terminated her employment on the basis of her national origin, religion and race. The defendant filed a motion for summary judgment claiming that the plaintiff had failed to make out a prima facie case of discrimination on any of her claims. The trial court granted the motion and rendered judgment for the defendant. The plaintiff appealed to the Appellate Court, which affirmed the judgment of the trial court. *Feliciano* v. *Autozone, Inc.*, 142 Conn. App. 756, 774, 66 A.3d 911 (2013). We then granted the plaintiff's application for certification to appeal on the following issue: "Did the Appellate Court properly affirm the trial court's entry of summary judgment on all counts of the plaintiff's complaint?" *Feliciano* v. *Autozone, Inc.*, 310 Conn. 908, 76 A.3d 625 (2013). We reverse the judgment of the Appellate Court affirming the judgment of the trial court only with respect to the plaintiff's claim of sexual harassment in the workplace, and affirm the judgment in all other respects.

The opinion of the Appellate Court sets forth the following undisputed facts and procedural history. "The plaintiff is a black female who was born in the U.S. Virgin Islands and practices the Rastafarian religion. As part of her religion, she wears her hair in dreadlocks. The plaintiff was employed by the defendant, first as a sales clerk and later as a supervisor, for a few years before being transferred to the defendant's Bloomfield location (store). Michael Balboni became the manager of the store in 2005, while the plaintiff was a supervisor there. The defendant had a company wide customer loyalty reward card program in place for purchases made by customers. In May, 2007, the defendant's automatic loss prevention computer program flagged twenty transactions between April 28 and May 9, 2007, involving the same customer loyalty card number. Nineteen of the twenty transactions were listed as being processed under the plaintiff's customer service representative number.

"On May 16, 2007, the plaintiff was accused by the defendant of improperly using a customer loyalty reward card for her own use. Patricia Vasquez, a loss prevention specialist, was sent by the defendant to investigate the situation. Vasquez questioned the plain-

tiff in the presence of Erwin Ballou, a district manager of the defendant. At the interview, the plaintiff admitted that she signed into the cash register and left it signed in under her customer service representative number for other employees to use. The plaintiff further admitted that she was 'wrong' for letting other employees work under her customer service representative number. Vasquez forwarded her report, including the plaintiff's statements, to the defendant's staff attorney, Timothy P. Harrison, in Tennessee. He was not acquainted with the plaintiff. Harrison recommended that the plaintiff's employment be terminated, and Azeem Sikandar, regional manager for the defendant, followed the recommendation by calling for the termination of the plaintiff's employment on the ground that she had violated the defendant's loss prevention policy. The plaintiff's employment was terminated on May 22, 2007. . . .

"Following her termination, the plaintiff filed a timely complaint with the Connecticut [C]ommission on [H]uman [R]ights and [O]pportunities on July 27, 2007, within 180 days of the actions attributed to the defendant, and with the federal Equal Employment Opportunity Commission. The federal Equal Employment Opportunity Commission issued a notice of right to sue on April 7, 2009, and the Connecticut [C]ommission on [H]uman [R]ights and [O]pportunities released jurisdiction on April 14, 2009. On April 30, 2009, the plaintiff commenced this action in the trial court pursuant to the Connecticut Fair Employment Practices Act.[1]

"The defendant moved for summary judgment on all five counts of the plaintiff's complaint and, following oral argument by counsel, the court issued its memorandum of decision and entered its corresponding judgment on February 10, 2012, rendering summary judgment on all counts in favor of the defendant." (Footnotes altered.) *Feliciano* v. *Autozone, Inc.*, supra, 142 Conn. App. 758–60.

The plaintiff then appealed to the Appellate Court claiming that the trial court improperly had rendered summary judgment on all five counts of her complaint because there were genuine issues of material fact as to all of her claims. Id., 760. The Appellate Court, as did the trial court, construed the plaintiff's complaint as raising claims that the defendant had failed to reasonably accommodate her claimed disability; id., 762; had engaged in sexual harassment in the workplace; id., 764–65; and had unlawfully terminated her employment on the basis of her national origin, religion and race.[2] Id., 769. With respect to the disability discrimination claim, the Appellate Court determined that the trial court properly had determined that the plaintiff had failed to establish a genuine issue of material fact as to whether she was disabled within the meaning of the Connecticut Fair Employment Practices Act. Id., 764.

With respect to the plaintiff's claim of sexual harassment, the Appellate Court concluded that the trial court improperly had assumed that the plaintiff had intended to bring a hostile work environment claim pursuant to General Statutes § 46a-60 (a) (8) (C);[3] id., 766–67; see footnote 1 of this opinion; and affirmed the judgment on the alternative ground that "[t]he defendant was not on notice of the statutory basis for the plaintiff's claim"; *Feliciano* v. *Autozone, Inc.*, supra, 142 Conn. App. 767; because the plaintiff had not brought the claim pursuant to a specific provision of § 46a-60. Id., 767–68. With respect to the plaintiff's unlawful termination claims, the Appellate Court upheld the judgment of the trial court that the plaintiff had failed to establish a genuine issue of material fact as to whether the plaintiff's termination occurred under "circumstances . . . that give rise to an inference of discrimination" on the basis of her national origin, religion or race. Id., 774.

The plaintiff claims on appeal to this court that the Appellate Court improperly determined that: (1) she had failed to make out a prima facie case that her employment was unlawfully terminated on the basis of her national origin, religion or race; and (2) she could not prevail on her sexual harassment claim because the defendant was not on notice of the statutory basis of the claim.[4] We reject the plaintiff's first claim but agree with her second claim. We further conclude that the plaintiff has established a genuine issue of material fact as to whether she was subjected to a hostile work environment on the basis of her sex.

We begin by setting forth the applicable standard of review. "The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A material fact . . . [is] a fact which will make a difference in the result of the case. . . . Finally, the scope of our review of the trial court's decision to grant the plaintiff's motion for summary judgment is plenary." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *H.O.R.S.E. of Connecticut, Inc.* v. *Washington*, 258 Conn. 553, 558–60, 783 A.2d 993 (2001).

With these principles in mind, we first address the plaintiff's claim that the defendant unlawfully terminated her employment on the basis of her national origin, religion or race. The legal standards governing discrimination claims involving adverse employment actions are well established. "The framework this court employs in assessing disparate treatment discrimination claims under Connecticut law was adapted from the United States Supreme Court's decision in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and its progeny. *Lyon* v. *Jones*, 291 Conn. 384, 406–407, 968 A.2d 416 (2009). We look to federal law for guidance on interpreting state employment discrimination law, and the analysis is the same under both. *State* v. *Commission on Human Rights & Opportunities*, 211 Conn. 464, 469–70, 559 A.2d 1120 (1989). *Craine* v. *Trinity College*, 259 Conn. 625, 637 n.6, 791 A.2d 518 (2002). Under this analysis, the employee must first make a prima facie case of discrimination. Id., 637. In order for the employee to first make a prima facie case of discrimination, the plaintiff must show: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position; (3) the plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination. See *McDonnell Douglas Corp.* v. *Green*, supra, 802. The employer may then rebut the prima facie case by stating a legitimate, nondiscriminatory justification for the employment decision in question. *Craine* v. *Trinity College*, supra, 637. This burden is one of production, not persuasion; it can involve no credibility assessment. . . . *Board of Education* v. *Commission on Human Rights & Opportunities*, 266 Conn. 492, 506, 832 A.2d 660 (2003). The employee then must demonstrate that the reason proffered by the employer is merely a pretext and that the decision actually was motivated by illegal discriminatory bias. *Craine* v. *Trinity College*, supra, 637." (Internal quotation marks omitted.) *Feliciano* v. *Autozone, Inc.*, supra, 142 Conn. App. 769–70.

The Appellate Court concluded that the plaintiff had established the first three prongs of the *McDonnell Douglas Corp.* framework; id., 770; but had not established a genuine issue of material facts as to the fourth prong, that the circumstances surrounding her termination gave rise to an inference of discrimination on the basis of her national origin, religion or race. Id., 774. The plaintiff contends that, to the contrary, the evidence showing that the defendant treated other similarly situated employees more favorably than her was sufficient to establish a genuine issue of material fact. See *Perez-Dickson* v. *Bridgeport*, 304 Conn. 483, 514, 43 A.3d 69 (2012) (to establish that adverse employment action took place under circumstances permitting inference of discrimination, "a litigant may present circumstantial

evidence from which an inference may be drawn that similarly situated individuals were treated more favorably than she was"); see also id., 519 (to raise inference of discrimination on basis of disparate treatment, evidence must reveal "a stark pattern of discrimination" [internal quotation marks omitted]).[5] The plaintiff further contends that she presented ample evidence of Balboni's discriminatory animus toward her, and that this animus may be imputed to the defendant. See *Staub* v. *Proctor Hospital*, 562 U.S. 411, 131 S. Ct. 1186, 1194, 179 L. Ed. 2d 144 (2011) (even when person who made adverse employment decision was not personally motivated by discriminatory animus, animus of another agent of employer can be attributed to employer if that agent's animus was proximate cause of adverse action); see also *Cone* v. *Longmont United Hospital Assn.*, 14 F.3d 526, 531 (10th Cir. 1994) (to establish that employment action was discriminatory on basis of coworkers' discriminatory statements, plaintiff "must demonstrate a nexus exists between these allegedly discriminatory statements and the [employer's] decision to terminate"); *Diamantopulos* v. *Brookside Corp.*, 683 F. Supp. 322, 327 (D. Conn. 1988) ("[n]o matter how illogical or irrational a decision might be, it is only actionable if the employer harbors a discriminatory animus *and that animus is one of the causes of the adverse action taken against the employee*" [emphasis added]).

The following additional evidence, viewed in the light most favorable to the nonmoving plaintiff for purposes of reviewing the trial court's grant of the defendant's motion for summary judgment, is relevant to these claims. Balboni repeatedly referred to the plaintiff as an "f'ing Jamaican"; suggested that Jamaicans live in grass huts, wear grass skirts, drink out of coconut shells, and eat cats and dogs; ridiculed the plaintiff's dreadlocks and suggested that her hair was dirty; told the plaintiff that there is no God and that she just had "false hopes"; suggested that all Rastafarians steal; and mocked the plaintiff by wearing a dreadlocks wig and saying, "I'm . . . a Rastafarian. Watch me because I steal."

The computerized loss prevention report that flagged twenty transactions at the defendant's store involving the same customer loyalty card number, nineteen of which had been processed under the plaintiff's customer service representative number, also showed that the remaining transaction had been processed under the customer service representative number of another employee, Shaun Davis. There is no evidence that Davis was investigated for wrongdoing. In addition, the plaintiff testified at a deposition, the transcript of which was attached as an exhibit to her opposition to the defendant's motion for summary judgment, that she had complained to Balboni, Ballou and Sikandar that another employee, Sakari Pina, as well as other employees, had been stealing from the store, and that no action

was taken against those employees. The plaintiff also testified that she had warned Balboni that he should not hire a particular young male whose full name the plaintiff could not remember because he had previously stolen from the store. In response, Balboni accused the plaintiff of being a racist because the person was white. Balboni hired the person, who was later terminated for stealing. Finally, the plaintiff testified at her deposition that Balboni regularly had implied in conversations with her that she was stealing from the store in the weeks preceding her termination.

With respect to the plaintiff's claim that she established that there was a genuine issue of material fact as to whether she was treated differently than other similarly situated employees on the basis of her national origin, religion and race, we are not persuaded. Although she claims that she was treated less favorably than Davis, the loss prevention report showing multiple transactions for the same customer loyalty card under the plaintiff's and Davis' customer service representative numbers appears to show that the transaction under Davis' number was a credit in the amount of a previous transaction under the plaintiff's number, while all of the transactions under the plaintiff's number were purchases. Thus, there is no evidence that Davis engaged in theft. In any event, the plaintiff has pointed to no evidence regarding Davis' national origin, religion or race.[6] Thus, there is no basis for any inference that Davis was treated more favorably than the plaintiff because of these characteristics. Similarly, with respect to her claim that she was treated worse than the other employees who were under suspicion of theft, there is no evidence of their national origin, religion or race, except with respect to Pina, who was African-American and who was not fired, and the young male who Balboni had hired against the plaintiff's advice, who was white and who was fired. Thus, far from evincing the stark pattern of disparate treatment that is required to raise an inference of discriminatory treatment; *Perez-Dickson* v. *Bridgeport*, supra, 304 Conn. 517–19; the evidence in the present case shows *no* pattern of disparate treatment on the basis of national origin, religion or race.

We further conclude that, although there was ample evidence that Balboni had treated the plaintiff in a despicable manner because of her perceived national origin, religion or race, the Appellate Court properly concluded that there was no evidence of a causal connection between Balboni's discriminatory animus and the defendant's termination of the plaintiff's employment. Specifically, although there was evidence that Balboni had implied to the plaintiff that he believed that she was stealing items from the store, there is no evidence that Balboni ever reported his suspicions to anyone else or that he influenced the investigation that resulted in the plaintiff's termination in any way.[7] Indeed, the

plaintiff does not seriously contend that there was *affirmative evidence* of a connection between Balboni's discriminatory animus and her termination. Rather, she contends that the jury reasonably could have *disbelieved* the defendant's evidence that Balboni was *not* involved in any way in the decision to terminate her employment, and such disbelief would be sufficient to raise a genuine issue of material fact as to Balboni's involvement. We disagree.

Although disbelief of an employer's explanation for an adverse employment action, *in combination with the plaintiff's prima facie case of discrimination*, may, under some circumstances, be sufficient to meet the plaintiff's ultimate burden of proving intentional discrimination; *Reeves* v. *Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) ("[t]he factfinder's disbelief of the reasons put forward by the defendant [particularly if disbelief is accompanied by a suspicion of mendacity] may, *together with the elements of the prima facie case*, suffice to show intentional discrimination" [emphasis added; internal quotation marks omitted]); *Board of Education* v. *Commission on Human Rights & Opportunities*, supra, 266 Conn. 510 ("an employment discrimination claim will not necessarily fail, as a matter of law, when the only evidence of discrimination is *the evidence necessary to establish a prima facie case* and evidence that the employer's legitimate, nondiscriminatory reasons are false" [emphasis added]); disbelief of the employer's evidence is not sufficient to establish a prima facie case of discrimination in the first instance. *St. Mary's Honor Center* v. *Hicks*, 509 U.S. 502, 519, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993) ("[i]t is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination" [emphasis in original]); *Board of Education* v. *Commission on Human Rights & Opportunities*, supra, 505 (burden is on plaintiff to establish prima facie case that "the adverse action occurred under circumstances giving rise to an inference of discrimination"); *Board of Education* v. *Commission on Human Rights & Opportunities*, supra, 517 (inference of discrimination may not be based on "mere conjecture or surmise"); see also *State* v. *Hart*, 221 Conn. 595, 605, 605 A.2d 1366 (1992) ("jury may not infer the opposite of a witness' testimony *solely* from its disbelief of that testimony" [emphasis added]). In the absence of any affirmative evidence of a causal connection between Balboni's discriminatory animus toward the plaintiff and the defendant's termination of her employment, no inference of the defendant's discriminatory intent can be made. See *Staub* v. *Proctor Hospital*, supra, 131 S. Ct. 1194; *Cone* v. *Longmont United Hospital Assn.*, supra, 14 F.3d 531; *Diamantopulos* v. *Brookside Corp.*, supra, 683 F. Supp. 327. Accordingly, we affirm the judgment of the Appellate Court upholding the trial

court's ruling that the plaintiff had failed to establish a genuine issue of material fact as to whether the defendant unlawfully had terminated her employment on the basis of her national origin, religion or race.

We next turn to the plaintiff's claim that the Appellate Court improperly concluded that she could not prevail on her sexual harassment claim because the defendant was not on notice of the statutory basis of the claim. We agree with the plaintiff. We further conclude that the trial court improperly determined that the plaintiff had failed to establish a genuine issue of material fact as to whether she was subjected to a hostile work environment because of her sex.

The following additional facts and procedural history are relevant to this claim. Count three of the plaintiff's complaint was captioned: "CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT (SEXUAL HARASSMENT)." Paragraphs one through twenty-one of count three incorporate the corresponding paragraphs from count one alleging discrimination on the basis of national origin. The relevant paragraphs alleged that Balboni had rubbed his body against the plaintiff and, after the plaintiff complained and told him to stop, he sent her a text message stating, "you [bitch]." The plaintiff also alleged that, when she was on sick leave because of pain in her knee, Balboni had stated to other employees that "she was a man and could not feel pain and that she should just 'suck it up' and get back to work." In addition, she alleged that Balboni had ridiculed her by wearing a dreadlocks wig and telling her that that was how she looked.[8]

During discovery, the plaintiff stated in response to the defendant's interrogatories that Balboni had repeatedly bumped into her in a manner that was not accidental, and rubbed up against her.[9] She further stated that Balboni "came up behind her and rubbed his crotch against her buttocks and then moved on." After Balboni sent her the text message that stated, "you bitch," the plaintiff confronted him and Balboni first said that he was joking, and then denied that he had sent the message. Balboni also commented that Pina had a "big ass" and the plaintiff had a "flat ass."

At her deposition, the plaintiff testified that Balboni repeatedly had tried to play with her hair and that he had rubbed up against her "about three times." In addition, she testified that Balboni touched his crotch on more than one occasion, and would "play with" Pina and "smack her on the ass." Balboni also spoke about Pina having had abortions and stated, "at least that second one wasn't [mine]." When women would come into the defendant's store, he would compare their appearance and say things like "I ain't had a black, juicy piece like that," and "I don't discriminate. I do black, white, Puerto Rican, anything." When the plaintiff complained to her supervisor, Brandon Casey, about Bal-

boni's rubbing up against her, Casey told her to "stop being petty" and said that Balboni "probably didn't mean it." The plaintiff also complained about Balboni's conduct to Ballou and another supervisor, for whom the plaintiff could recall only his first name as Leo. Ballou told her that "these things are not really relevant." There is no evidence that Leo responded in any way to the plaintiff's complaint. In her complaint to the Commission on Human Rights and Opportunities, which was also presented as evidence during the proceedings on the defendant's motion for summary judgment, the plaintiff represented that much of Balboni's conduct occurred between February, 2007 and May, 2007.[10]

The defendant argued in its memorandum of law in support of its motion for summary judgment that the plaintiff's sexual harassment claim should be "summarily dismissed" because she had alleged in count three only that she had been discharged for her religious beliefs. The defendant further argued that the evidence produced by the plaintiff, including the statements in the plaintiff's interrogatory responses and her deposition testimony, did not create a genuine issue of material fact as to whether Balboni's conduct was sufficiently severe or pervasive to create a hostile work environment. In her opposition to the defendant's motion for summary judgment, the plaintiff contended that, to the contrary, the evidence was sufficient to establish "a genuine question of material fact whether these events, taken as a whole, worsened [the plaintiff's] working environment or constituted sexual harassment." In its reply brief in support of the motion for summary judgment, the defendant again contended that "[c]onduct far more egregious than the conduct [that the plaintiff complained of] has been found by courts to not reach the necessary level of severe or pervasive conduct sufficient to alter an employee's terms or conditions of employment."

The trial court concluded in its memorandum of decision that the plaintiff's reference to religious discrimination in count three of the complaint alleging sexual harassment was "an obvious scrivener's error . . . ." The court further concluded that, "although the plaintiff does not specifically reference the sexual harassment provision of . . . § 46a-60 (a) (8), the court assumes her intention was to rely on that provision in making a claim of sexual harassment. . . . Based on her deposition testimony and other exhibits submitted in opposition to the motion for summary judgment, the plaintiff's sexual harassment claim fits most logically into the category of a claim of 'hostile or offensive work environment.' " The court ultimately concluded that the plaintiff's evidence did not create a genuine issue of material fact as to whether the sexual harassment was sufficiently severe or pervasive to establish "a valid hostile work environment claim within the meaning of . . .

§ 46a-60 (a) (8).” As we have indicated herein, the Appellate Court upheld the trial court's ruling on the alternative ground that the trial court improperly had assumed that the plaintiff intended to bring a hostile work environment claim pursuant to § 46a-60 (a) (8) (C) because “[t]he defendant was not on notice of the statutory basis for the plaintiff's claim”; *Feliciano* v. *Autozone, Inc.*, supra, 142 Conn. App. 767; when the plaintiff had not specifically cited that provision. Id., 768.

We disagree. Although the plaintiff's complaint was certainly not a model of clarity, it is clear that the defendant understood that the plaintiff's allegations regarding Balboni's conduct were intended to raise a hostile work environment claim pursuant to § 46a-60 (a) (8) (C), because that is the theory that the defendant attempted to discredit on the merits in its motion for summary judgment. The plaintiff confirmed the defendant's understanding when she contended in her opposition to the defendant's motion for summary judgment that she had established a genuine issue of material fact as to whether Balboni's conduct had worsened her “working environment . . . .” Thus, contrary to the Appellate Court's conclusion that the trial court simply assumed without any basis that the plaintiff had intended to bring a hostile work environment claim, the trial court was merely addressing the issue as it had been framed by the parties. “[A]lthough a plaintiff should plead a statute [on which the plaintiff intends to rely] in a complaint . . . failing to do so will not necessarily bar recovery as long as the [defendant is] *sufficiently apprised* of the applicable statute during the course of the proceedings.” (Emphasis in original.) *Spears* v. *Garcia*, 66 Conn. App. 669, 676, 785 A.2d 1181 (2001), aff'd, 263 Conn. 22, 818 A.2d 37 (2003). Because the defendant understood the nature of the plaintiff's sexual harassment claim, we conclude that the Appellate Court improperly upheld the ruling of the trial court on the alternative ground that the plaintiff had not expressly pleaded § 46a-60 (a) (8) (C).

Accordingly, we turn to the question of whether the trial court properly determined that the plaintiff failed to establish a genuine issue of material fact as to whether she had been subjected to a hostile work environment because of her sex. See *State* v. *James*, 261 Conn. 395, 411, 802 A.2d 820 (2002) (this court may address issue in certified appeal that Appellate Court did not reach in interests of avoiding delay and promoting judicial economy when record is adequate for review and issue has been briefed by parties). We begin our analysis with the governing legal standard. “[T]o establish a hostile work environment claim, a plaintiff must produce evidence sufficient to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment

and create an abusive working environment . . . . [I]n order to be actionable . . . a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. . . . Whether an environment is objectively hostile is determined by looking at the record as a whole and at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." (Citations omitted; internal quotation marks omitted.) *Patino* v. *Birken Mfg. Co.*, 304 Conn. 679, 699, 41 A.3d 1013 (2012). "As the Court of Appeals for the Second Circuit explained with respect to offensive slurs in another context: [T]here must be more than a few isolated incidents of racial enmity . . . meaning that [i]nstead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments . . . . Thus, whether racial slurs constitute a hostile work environment typically depends upon the quantity, frequency, and severity of those slurs . . . considered cumulatively in order to obtain a realistic view of the work environment . . . . *Schwapp* v. *Avon*, 118 F.3d 106, 110–11 (2d Cir. 1997)." (Internal quotation marks omitted.) *Patino* v. *Birken Mfg. Co.*, supra, 699–700.

In support of its claim that the trial court properly determined that the plaintiff had not established a genuine issue of material fact as to whether she was subject to a hostile work environment on the basis of her sex, the defendant relies on a number of cases in which, according to the defendant, the respective courts found that much worse discriminatory conduct than that alleged by the plaintiff was insufficiently pervasive and severe to be actionable. See *Quinn* v. *Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998) (plaintiff's claims that her supervisor had told her that she had been voted "sleekest ass" in office and that he deliberately had touched her breasts with some papers that he was holding were "sufficiently isolated and discrete that a trier of fact could not reasonably conclude that they pervaded [the plaintiff's] working environment");[11] *Bailey* v. *Synthes*, 295 F. Supp. 2d 344, 358 (S.D.N.Y. 2003) (plaintiff's claims that various supervisors had shown group of employees vacation photographs displaying representations of male genitalia on native buildings, had engaged in sexually suggestive dancing with another female staff member, had told plaintiff of sexual experience with nurse, and had given plaintiff smaller cigar than those provided to male colleagues were not sufficient to create genuine issue of material fact as to whether employer created hostile work environment because actions were infrequent and isolated, were not physically threatening, occurred outside of plaintiff's daily work routine, and there was no evidence to show

that they affected her work performance); *Lamar* v. *NYNEX Service Co.*, 891 F. Supp. 184, 184–85 (S.D.N.Y 1995) (female plaintiff's claim that female supervisor had "grasped her hand to admire her rings and told her that she 'looked really hot,'" made vulgar sexual remarks to groups of employees, displayed sexually revealing garment to several employees, and stared at plaintiff in hostile manner and behaved abusively toward her were not sufficiently severe or pervasive to create hostile work environment when plaintiff did not object to conduct and behavior was not directed specifically at her); *Babcock* v. *Frank*, 783 F. Supp. 800, 808–809 (S.D.N.Y. 1992) (plaintiff's claims that supervisor with whom she had had affair issued disciplinary letter to her, which was later expunged from plaintiff's personnel file and had no lasting effect on plaintiff, that coworker had thrown pencils at her, that another coworker had written anonymous note to plaintiff suggesting that she get hairpiece, that supervisor had given her red lace underwear as "gag gift" at Christmas party, and that coworker had hung photograph of half-naked woman on wall of his office, which was not observed by anyone else or subject of any complaint, were not sufficient to establish hostile work environment because incidents were isolated and employer responded promptly to all of plaintiff's complaints).

We conclude that these cases are distinguishable from the present case. *Quinn* v. *Green Tree Credit Corp.*, supra, 159 F.3d 768, involved only two isolated incidents. In *Bailey* v. *Synthes*, supra, 295 F. Supp. 2d 358, the supervisor's actions were infrequent and isolated, were not physically threatening and occurred outside of the plaintiff's daily work routine. In *Lamar* v. *NYNEX Service Co.*, supra, 891 F. Supp. 185, the plaintiff did not object to her supervisor's behavior and that behavior was not directed specifically at the plaintiff. In *Babcock* v. *Frank*, supra, 783 F. Supp. 808–809, the incidents were isolated and, in one instance, uncorroborated, and the employer responded promptly to all of the plaintiff's complaints. In contrast, in the present case, the plaintiff claimed that, over the period of just a few months, Balboni had rubbed up against her three times and, when she asked him to stop, he sent her a text message stating, "you bitch." During the same period, Balboni twice ridiculed the plaintiff's hairstyle in a most public and offensive manner and called the plaintiff a man who was incapable of feeling pain. When the plaintiff complained about Balboni's conduct to her supervisors, she was chided for being "petty" and for raising issues that were "not relevant." Although the specific dates of Balboni's other actions are not clear, viewed in the light most favorable to the plaintiff, the evidence would support a conclusion that his vulgar comments about the physical attributes of female customers, Pina and the plaintiff, his statements to the effect that he was willing to have sexual relations with "black, white,

Puerto Rican, anything," his sexually provocative conduct with and comments about Pina, and his repeated touching of his crotch were ongoing issues.

We note that the trial court considered only one of Balboni's unnecessary physical contacts with the plaintiff and his text message to the plaintiff when it concluded that the plaintiff had not established a genuine issue of material fact as to whether Balboni's conduct created a hostile work environment. Summary judgment is appropriate, however, only when, on the basis of *all* of the evidence, "*view*[*ed*] . . . *in the light most favorable to the nonmoving party,*" the movant is entitled to judgment as a matter of law. (Emphasis added; internal quotation marks omitted.) *H.O.R.S.E. of Connecticut, Inc.* v. *Washington*, supra, 258 Conn. 559; see also *Meritor Savings Bank, FSB* v. *Vinson*, 477 U.S. 57, 69, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986) (existence of hostile workplace must be determined "in light of the record as a whole and the totality of circumstances" [internal quotation marks omitted]). We conclude that, on the basis of all of this evidence, a reasonable juror could find that the defendant's "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment . . . ." (Internal quotation marks omitted.) *Patino* v. *Birken Mfg. Co.*, supra, 304 Conn. 699. Accordingly, we conclude that the trial court improperly determined that the plaintiff had not established a genuine issue of material fact as to whether the defendant had subjected her to a hostile work environment on the basis of her sex.

The judgment of the Appellate Court affirming the judgment of the trial court with respect to the plaintiff's claim of sexual harassment in the workplace is reversed and the case is remanded to the Appellate Court with direction to remand the case to the trial court for further proceedings on that claim; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.

[1] The plaintiff filed a five count complaint alleging unlawful discrimination on the basis of national origin, religion, sex, disability and race. Each count referred to the Connecticut Fair Employment Practices Act by name, but the plaintiff did not cite the specific statutes that she was relying on. The heading to count three provides as follows: "CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT (SEXUAL HARASSMENT)." The trial court ultimately construed the complaint as raising claims that the defendant had failed to reasonably accommodate her disability, had engaged in sexual harassment in the workplace in violation of General Statutes § 46a-60 (a) (8) (C), and had unlawfully terminated her employment on the basis of her national origin, religion and race.

[2] On appeal, the plaintiff does not challenge this construction of her complaint, which, as we have noted, was consistent with the approach taken by the trial court. Thus, she does not claim that her complaint, which was not a model of clarity, alleges that her employment was unlawfully terminated on the basis of her sex or disability or that she was subject to a hostile workplace environment on the basis of her national origin, religion or race.

[3] General Statutes § 46a-60 (a) provides in relevant part: "It shall be a

discriminatory practice in violation of this section . . .

"(8) For an employer, by the employer or the employer's agent, for an employment agency, by itself or its agent, or for any labor organization, by itself or its agent, to harass any employee, person seeking employment or member on the basis of sex or gender identity or expression. 'Sexual harassment' shall, for the purposes of this section, be defined as any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when (A) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (B) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (C) such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment . . . ."

We note that § 46a-60 (a) was amended since the time of the alleged discrimination in this case. See Public Acts 2011, No. 11-55, § 24. The changes are not relevant to this appeal. For purposes of convenience, we refer herein to the current revision of the statute.

[4] The plaintiff also claims in a footnote in her brief that the Appellate Court improperly "failed to find disability discrimination . . . ." Because this claim is supported only by one sentence in which the plaintiff states conclusorily that she was "treated differently than others who had disabling conditions," we conclude that the claim is inadequately briefed and decline to address it. See *Hurley* v. *Heart Physicians*, *P.C.*, 298 Conn. 371, 378 n.6, 3 A.3d 892 (2010).

[5] "This court previously has recognized that [s]tatistical evidence in a disparate treatment case, in and of itself, rarely suffices to rebut an employer's legitimate, nondiscriminatory rationale for its [adverse employment] decision . . . ." (Internal quotation marks omitted.) *Perez-Dickson* v. *Bridgeport*, supra, 304 Conn. 517. Similarly, statistical evidence will rarely suffice to raise an inference that the adverse employment decision was discriminatory under the fourth prong of the *McDonnell Douglas Corp.* framework. "This is because a[n] [employer's] overall employment statistics will, in at least many cases, have little direct bearing on the specific intentions of the employer . . . . Without an indication of a connection between the statistics, the practices of the employer, and the employee's case, statistics alone are likely to be inadequate to show that the employer's decision . . . was impermissibly based on [a protected trait]. . . . *Board of Education* v. *Commission on Human Rights & Opportunities*, supra, 266 Conn. 516. Standing alone, statistical evidence is sufficient to establish discriminatory intent in individual disparate treatment actions only when it shows a stark pattern of discrimination . . . . *Aragon* v. *Republic Silver State Disposal*, *Inc.*, 292 F.3d 654, 663 (9th Cir. 2002); id. (statistics must show a stark pattern of discrimination unexplainable on grounds other than [discrimination on the basis of membership in the protected class] . . .); see also *Ottaviani* v. *State University of New York*, 875 F.2d 365, 371 (2d Cir. 1989) (in individual disparate treatment actions, [w]here *gross* statistical disparities can be shown, they alone may in a proper case constitute prima facie proof of a pattern or practice of discrimination . . .), cert. denied, 493 U.S. 1021, 110 S. Ct. 721, 107 L. Ed. 2d 740 (1990); *Chesna* v. *United States Dept. of Defense*, 850 F. Sup. 110, 117–18 (D. Conn. 1994) (to prove intentional discrimination in violation of equal protection clause through circumstantial evidence of disparate treatment, plaintiff must show stark pattern of discrimination); *Life Technologies* v. *Superior Court*, 197 Cal. App. 4th 640, 650, 130 Cal. Rptr. 3d 80 (2011) (Statistical evidence may . . . be utilized in a disparate treatment case. However, because discriminatory intent must be shown in such a case, statistical evidence must meet a more exacting standard.); *Smith College* v. *Massachusetts Commission Against Discrimination*, 376 Mass. 221, 228 n.9, 380 N.E.2d 121 (1978) (in individual disparate treatment action, *gross* statistical disparities alone may constitute prima facie proof of a practice of discrimination . . .)." (Emphasis in original; footnote omitted; internal quotation marks omitted.) *Perez-Dickson* v. *Bridgeport*, supra, 517–19.

[6] The plaintiff represents in her brief to this court that Davis is not Rastafarian and is African-American. She does not indicate where in the record, however, evidence of Davis' race and religion can be found.

[7] There is evidence that the plaintiff told Ballou and Sikandar about other alleged acts of theft and, as we discuss later in this opinion, that she complained to Ballou about Balboni's conduct. Ballou was present during Vasquez' interview of the plaintiff. There is no evidence, however, that Balboni

had any influence on Ballou, or that Ballou had any influence on the investigation of the use of the customer loyalty card or the decision to terminate the plaintiff. There is also no evidence that Sikandar had any knowledge about or was influenced in any way by Balboni.

[8] In her complaint to the Commission on Human Rights and Opportunities, which was before the trial court in the proceedings on the defendant's motion for summary judgment, the plaintiff contended that Balboni had twice ridiculed her by wearing a dreadlocks wig, once in her presence and once when she was not present.

[9] These interrogatory responses were before the trial court in the proceedings on the defendant's motion for summary judgment.

[10] Specifically, the plaintiff claimed that Balboni had rubbed up against her and ridiculed her hairstyle during the months between February, 2007 and April, 2007. It is unclear when Balboni's other conduct occurred.

[11] The defendant in the present case contends that the court in *Quinn* held that the plaintiff had failed to establish a prima facie case of a hostile work environment when she alleged "thirty separate actions by [her] supervisors and coworkers and company clients which consisted of offensive comments referring either to the speaker's own sexual prowess, the plaintiff's body . . . or the sexual orientation of the plaintiff and her husband . . . the display of pornography to the plaintiff, the pantomiming of sexual acts, and one instance of a supervisor deliberately touching the plaintiff's breasts . . . ." The court in *Quinn* concluded for a variety of reasons, however, that it was barred from considering all but two of these acts. See *Quinn* v. *Green Tree Credit Corp.*, supra, 159 F.3d 765–68.

---