******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# LUIS MARTINEZ *v.* PREMIER MAINTENANCE, INC.
## (AC 40188)

Lavine, Alvord and Pellegrino, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant for, inter alia, religious discrimination in violation of the Connecticut Fair Employment Practices Act (§ 46a-51 et seq.) following the termination of his employment. The plaintiff was employed by the defendant as a cleaner/porter at certain apartments. After the plaintiff was promoted to acting supervisor of a cleaning crew, he recommended that the defendant hire A, who was the pastor of the plaintiff's church. C, who was the plaintiff's supervisor and who knew that the plaintiff was a chaplain at the same church, informed the plaintiff that if the defendant hired A, the plaintiff, while at work, could not refer to A as pastor or give A the respect ordinarily afforded a pastor. After A was hired, members of the cleaning crew complained that the plaintiff assigned easy jobs to A while they were assigned more demanding jobs, and that the plaintiff allowed A to take extra breaks and spend time talking with residents during work hours. C thereafter issued written warnings to the plaintiff and to A about their work performance. Neither the plaintiff nor A wrote anything in the employee remarks section of the warning forms they received as to why they disagreed with the warnings. H, the manager of the apartments, then requested that C remove the plaintiff from his position after H was told of complaints from tenants about the plaintiff and A. When C, in the presence of the plaintiff, discharged A from his employment, the plaintiff referred to A as pastor. The plaintiff alleged that C then became angry and admonished him for having referred to A as pastor, and immediately discharged him as well. The trial court granted the defendant's motion for summary judgment and rendered judgment thereon, concluding, inter alia, that the plaintiff had failed to establish a prima facie case of employment discrimination in violation of statute ([Rev. to 2011] § 46a-60 [a] [1]) or a prima facie case of retaliation in violation of statute ([Rev. to 2011] § 46a-60 [a] [4]). On the plaintiff's appeal to this court, *held*:

1. The plaintiff could not prevail on his claim that the trial court improperly granted the defendant's motion for summary judgment when it applied the pretext model of analysis under *McDonnell Douglas Corp.* v. *Green* (411 U.S. 792) and *Texas Dept. of Community Affairs* v. *Burdine* (450 U.S. 248), rather than the mixed-motive model of analysis under *Price Waterhouse* v. *Hopkins* (490 U.S. 228) in determining whether he established a prima facie case of employment discrimination; the plaintiff did not allege that he was fired for legitimate and illegitimate reasons but, rather, alleged that the defendant's reason for termination was a pretext for religious discrimination, and, therefore, the pretext model of analysis applied.

2. The trial court properly determined that there were no genuine issues of material fact as to whether the defendant harbored bias or discriminatory intent on the basis of the plaintiff's religion: the plaintiff did not point to any facts from which it could be inferred that the defendant discriminated against him on the basis of his religion and church membership prior to the hiring of A, the plaintiff presented no evidence that the defendant treated others more favorably than it treated him or A, as it was the plaintiff who gave A more favorable treatment than other members of the cleaning crew, and C's conduct in firing the plaintiff did not raise an inference of discrimination, as C stated that he told the plaintiff and A that they were terminated due to conduct and performance issues, and neither the plaintiff nor A referenced in the employee remarks section of the written warnings they received that C became angry when the plaintiff referred to A as pastor when C discharged A.

3. The trial court properly granted summary judgment on the plaintiff's retaliation claim: although the plaintiff claimed that he alleged that he engaged in a protected activity when he referred to A as pastor despite

having been told that he should not do so while the two were working, he did not allege that he participated in a protected activity by formally or informally protesting the defendant's alleged religious discrimination, and a generous reading of the plaintiff's allegations of retaliation did not put the defendant or the court on notice that he engaged in a protected activity under § 46a-60 (a) (4); moreover, the plaintiff failed to raise a genuine issue of material fact that his reference to A as pastor when C fired A constituted an informal complaint, as the plaintiff did not document his protest in the employee remarks section of the defendant's employee warning record or attest in his affidavit in opposition to the defendant's motion for summary judgment to having lodged an informal protest.

Argued April 17—officially released October 16, 2018

*Procedural History*

Action to recover damages for, inter alia, alleged religious discrimination, and for other relief, brought to the Superior Court in the judicial district of Waterbury, where the court, *Brazzel-Massaro*, *J.*, granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed*.

*James F. Sullivan*, with whom was *Jake A. Albert*, for the appellant (plaintiff).

*Angelica M. Wilson*, with whom, on the brief, was *Glenn A. Duhl*, for the appellee (defendant).

*Opinion*

LAVINE, J. The plaintiff, Luis Martinez, appeals from the trial court's grant of summary judgment in favor of the defendant, Premier Maintenance, Inc., on all three counts of the plaintiff's second revised complaint alleging religious discrimination in violation of the Connecticut Fair Employment Practices Act (act), General Statutes § 46a-51 et seq. On appeal, the plaintiff claims that the trial court improperly (1) utilized the pretext/ *McDonnell Douglas-Burdine* model; *Texas Dept. of Community Affairs* v. *Burdine*, 450 U.S. 248, 252–56, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981); *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); rather than the mixed-motive/*Price Waterhouse* model of analysis; *Price Waterhouse* v. *Hopkins*, 490 U.S. 228, 246, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989);[1] when adjudicating the motion for summary judgment, (2) concluded that there was no genuine issue of material fact as to whether he had demonstrated a prima facie case of employment discrimination, and (3) concluded that there was no genuine issue of material fact that he was not engaged in a protected activity under the act. We disagree and affirm the judgment of the trial court.

The plaintiff commenced the present action against the defendant in November, 2013, alleging that he and the defendant were employee and employer, respectively, within the meaning of the act. His second revised complaint alleged three counts, namely, employment discrimination in violation of General Statutes (Rev. to 2011) § 46a-60 (a) (1), employer retaliation in violation of General Statutes (Rev. to 2011) § 46a-60 (a) (4), and aiding and abetting discrimination in violation of General Statutes (Rev. to 2011) § 46a-60 (a) (5). The plaintiff alleged the following facts in the operative complaint. The plaintiff was employed by the defendant as a cleaner/porter at the Enterprise-Schoolhouse Apartments (apartments) in Waterbury, which were managed by the defendant's customer, WinnResidential. During the time he was employed by the defendant, the plaintiff's supervisor, Sandino Cifuentes, knew that the plaintiff was a chaplain at Tabernacle of Reunion Church. Prior to the plaintiff's termination from employment, Cifuentes had informed him that while he was at work, the plaintiff could not refer to a coworker, Ismael Agosto, as "pastor" or give Agosto the respect ordinarily afforded a pastor.

The plaintiff also alleged that on June 22, 2012, Carolyn Hagan, manager of the apartments, relayed information to Cifuentes that during church services, Agosto had read the names of tenants who were in jeopardy of being evicted from the apartments. Hagan learned of the incident from Daisy Alejandro, assistant manager of the apartments, who heard of the incident from tenants Enrique Cintron and his wife, Jorge Cintron. Hagan

also relayed to Cifuentes a complaint from Jorge Cintron that the plaintiff was telling tenants of the apartment that the "office does not do anything and that is why nothing gets done . . . ." Moreover, Hagan relayed that the plaintiff informed nonresidents who were in the apartments, when anyone from the office was entering the apartments, so that they could leave before the staff arrived. Hagan also reported that the plaintiff was on his phone constantly, not working, and spent work time "hanging out" with a woman who lived across the street from the apartments.

The plaintiff further alleged that on or about June 26, 2012, Hagan requested that Cifuentes remove the plaintiff from his position. On August 3, 2012, Cifuentes discharged Agosto from his employment in the presence of the plaintiff. During the discharge meeting, the plaintiff referred to Agosto as "pastor . . . ." Cifuentes admonished the plaintiff and immediately discharged him as well.

The plaintiff alleged that he had no performance or conduct issues and that the quality of his work was excellent. He denied helping to compile the list of names of tenants in jeopardy of eviction. On December 14, 2011, Charles Riddle, maintenance director for CMM WinnResidential, had sent Hagan a message stating that the plaintiff was a great choice for temporary supervisor. In addition, the plaintiff alleged that the Cintrons' complaint against him was made in retaliation for an incident at church when Agosto admonished them for playing music at an inappropriate time. The plaintiff alleged that despite the unsubstantiated nature of the Cintrons' complaint and despite the fact that his job performance was satisfactory, the defendant discharged him from employment.

In count one, the plaintiff alleged that the defendant discriminated against him on the basis of his religion in such a way that it adversely affected his status as an employee, that the defendant warned and disciplined the plaintiff and terminated the plaintiff's employment on account of his religion in violation of § 46a-60 (a) (1), and that the defendant's unequal treatment of the plaintiff was arbitrary and unreasonably discriminatory in violation of the statute. Moreover, he alleged that the defendant exhibited ill will, malice, improper motive, and indifference to the plaintiff's civil rights.

In count two, the plaintiff alleged that he held a bona fide religious belief and was the chaplain at the Tabernacle of Reunion Church. The defendant, through its agents, servants and employees, was aware of the plaintiff's position in the church and that Agosto was the pastor of the church. The plaintiff alleged that the defendant's agents discriminated against him on the basis of his religion and discharged him for practicing his religious beliefs. The defendant retaliated against him for using the term "pastor" and "chaplain," despite

knowing the plaintiff's religious beliefs and customs associated with the use of such terms. He claimed damages.

In count three, the plaintiff alleged that the defendant, through its agents, servants, and employees, was aware of his religious beliefs, customs and practices, and aided and abetted the unlawful conduct of its supervisors and employees by permitting one of its agents to discriminate against him on the basis of his religious beliefs in violation of the act. The plaintiff again alleged damages.

The defendant denied the material allegations of the second revised complaint and alleged nine special defenses. In particular, the defendant alleged as its fourth special defense to all counts in the complaint: "All actions taken by [the defendant] with respect to [the] plaintiff and [the] plaintiff's employment were undertaken for legitimate, nondiscriminatory business reasons."

On July 8, 2016, the defendant filed a motion for summary judgment in which it claimed that there were no genuine issues of material fact such that the plaintiff could not establish a prima facie violation of the act. Furthermore, the defendant claimed that it had a legitimate, nondiscriminatory, nonretaliatory reason to terminate the plaintiff's employment and that the plaintiff could not demonstrate that the reason was false or a pretext. Also, the plaintiff could not establish a cause of action for aiding and abetting because, first, he could not establish that the defendant had discriminated or retaliated against him, and second, a defendant cannot be liable for aiding and abetting employees who are not parties to the action. The plaintiff filed an objection to the defendant's motion for summary judgment on the grounds that there were genuine issues of material fact and that he had established a prima facie case of employment discrimination, retaliation, and aiding and abetting on the basis of religion. In its reply to the plaintiff's objection, the defendant argued that the plaintiff had failed to present evidence that could persuade a rational fact finder that the defendant's legitimate, nondiscriminatory reason for terminating the plaintiff's employment was false or a pretext.

The parties appeared at short calendar on November 7, 2016, to argue the motion for summary judgment. The court issued its memorandum of decision granting the motion for summary judgment in favor of the defendant on February 15, 2017.[2] After stating the legal standards and principles regarding a motion for summary judgment and employment discrimination law, the court found that the defendant was entitled to summary judgment on each count of the second revised complaint and that the defendant had carried its burden of proving the absence of a genuine issue of material fact.[3]

The court cited the controlling statute: "It shall be a

discriminatory practice in violation of this section . . . (1) [f]or an employer . . . to discharge from employment any individual . . . because of the individual's . . . religious creed . . . ." General Statutes (Rev. to 2011) § 46a-60 (a). The court found that the plaintiff had alleged that he is a member of a protected class, was qualified for his position, and was terminated from his employment due to his use of the term "pastor" when referring to Agosto, his coworker, in the presence of Cifuentes, his supervisor. The plaintiff alleged that because the defendant disapproved of his use of religious terms such as "pastor" when he was working and was aware that he was a chaplain in Agosto's church, his employment termination occurred under circumstances giving rise to an inference of religious discrimination. The court found, however, that the plaintiff had failed to allege facts that the defendant harbored any bias that would create an inference of discrimination. The court concluded, therefore, that the plaintiff had failed to establish a prima facie case of employment discrimination under the act and that the defendant had demonstrated the absence of any genuine issues of material fact in this regard.

With respect to count two, a retaliation claim, the court cited § 46a-60 (a), which provides in relevant part that "[i]t shall be a discriminatory practice . . . (4) [f]or any . . . employer . . . to discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice or because such person has filed a complaint or testified or assisted in any proceeding under section 46a-82, 46a-83 or 46a-84 . . . ." The court found that the plaintiff had alleged that he had engaged in a protected activity when he openly called Agosto "pastor" in Cifuentes' presence. The court concluded that the plaintiff's use of the term pastor in defiance of Cifuentes' request that he not do so at work, however, was neither a formal nor informal protest of discrimination, but a continuation of behavior that Cifuentes had advised him against. The court concluded that because the plaintiff's acts did not fall under the category of protected activity, he had failed to establish a prima facie case of retaliation in violation of the act and that there were no genuine issues of material fact in that regard.

In count three, the plaintiff had alleged that the defendant aided and abetted the unlawful conduct of its supervisors and employees by permitting more than one of its agents to discriminate against him on the basis of his religious beliefs. Section 46a-60 (a) provides in relevant part that "[i]t shall be a discriminatory practice in violation of this section . . . (5) [f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory employment practice or to attempt to do so . . . ." The court noted that in

Connecticut, "an individual employee may be held liable for aiding and abetting his employer's discrimination; an employer [however] cannot be liable for aiding and abetting its own discriminatory conduct." (Internal quotation marks omitted.) *Farrar* v. *Stratford*, 537 F. Supp. 2d 332, 356 (D. Conn. 2008), aff'd, 391 Fed. Appx. 47 (2d Cir. 2010). The court concluded that the defendant could not have aided and abetted illegal discrimination because the plaintiff could not establish a prima facie case of discrimination against the defendant. Moreover, merely mentioning "supervisors and employees [who] assisted the alleged illegal, discriminatory conduct in the complaint" is not sufficient to sustain a claim of aiding and abetting against the defendant. The defendant cannot have discriminated against the plaintiff and at the same time aided and abetted its discrimination against him. The court concluded that the plaintiff had failed to state an aiding and abetting claim against the defendant.[4]

We now set forth the standard of review and the principles that guide our analysis of appeals from the rendering of summary judgment. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Rivers* v. *New Britain*, 288 Conn. 1, 10, 950 A.2d 1247 (2008). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under the applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Altfeter* v. *Naugatuck*, 53 Conn. App. 791, 800, 732 A.2d 207 (1999).

"A material fact is a fact that will make a difference in the result of the case." (Internal quotation marks omitted.) *Vollemans* v. *Wallingford*, 103 Conn. App. 188, 193, 928 A.2d 586 (2007), aff'd, 289 Conn. 57, 956 A.2d 579 (2008). "It is not enough for the moving party merely to assert the absence of any disputed factual issue; the moving party is required to bring forward . . . evidentiary facts, or substantial evidence outside the pleadings to show the absence of any material dispute. . . . The party opposing summary judgment must present a factual predicate for his argument to raise a genuine issue of fact. . . . Once raised, if it is not conclusively refuted by the moving party, a genuine issue of fact exists, and summary judgment is inappropriate." (Internal quotation marks omitted.) Id. "[A] party opposing

summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Internal quotation marks omitted.) *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 202, 663 A.2d 1001 (1995). Demonstrating a genuine issue "requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred." *United Oil Co.* v. *Urban Redevelopment Commission*, 158 Conn. 364, 378–79, 260 A.2d 596 (1969).

"The burden of proof that must be met to permit an employment-discrimination plaintiff to survive a summary judgment motion at the prima facie stage is de minim[i]s. . . . Since the court, in deciding a motion for summary judgment, is not to resolve issues of fact, its determination whether the circumstances giv[e] rise to an inference of discrimination must be a determination of whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive." (Citation omitted; internal quotation marks omitted.) *Chambers* v. *TRM Copy Centers Corp.*, 43 F.3d 29, 37–38 (2d Cir. 1994).

"On appeal, [an appellate court] must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . [Appellate] review of the trial court's decision to grant [a] defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Rivers* v. *New Britain*, supra, 288 Conn. 10.

I

The plaintiff claims that in ruling on the defendant's motion for summary judgment, the court improperly applied the pretext/*McDonnell Douglas-Burdine* model of analysis rather than the mixed-motive/*Price Waterhouse* model in determining whether he established a prima facie case of employment discrimination. We conclude that the court applied the appropriate model.

"Connecticut statutorily prohibits discrimination in employment based upon race, color, religious creed, age, sex, marital status, national origin, ancestry, present or past history of mental disorder, mental retardation, and learning disability or physical disability. General Statutes § 46a-60 (a) (1)." *Levy* v. *Commission on Human Rights & Opportunities*, 236 Conn. 96, 102, 671 A.2d 349 (1996). Our courts look to federal precedent for guidance in applying the act. *Miko* v. *Commission on Human Rights & Opportunities*, 220 Conn. 192, 202, 596 A.2d 396 (1991).

Generally, there are four theories of employment dis-

crimination under federal law. *Levy* v. *Commission on Human Rights & Opportunities*, supra, 236 Conn. 103. In the present case, we are concerned with a claim of disparate treatment. "Under the analysis of the disparate treatment theory of liability, there are two general methods to allocate the burdens of proof: (1) the mixed-motive/*Price Waterhouse* model . . . and (2) the pretext/*McDonnell Douglas-Burdine* model." (Citation omitted.) Id., 104–105.

"The legal standards governing discrimination claims involving adverse employment actions are well established." *Feliciano* v. *Autozone, Inc.*, 316 Conn. 65, 73, 111 A.3d 453 (2015). "A mixed-motive [*Price Waterhouse*] case exists when an employment decision is motivated by both legitimate and illegitimate reasons. . . . In such instances, a plaintiff must demonstrate that the employer's decision was motivated by one or more prohibited statutory factors. Whether through direct evidence or circumstantial evidence, a plaintiff must submit enough evidence that, if believed, could reasonably allow a [fact finder] to conclude that the adverse employment consequences resulted because of an impermissible factor. . . .

"The critical inquiry [in a mixed-motive case] is whether [a] discriminatory motive was a factor in the [employment] decision at the moment it was made. . . . Under this model, the plaintiff's prima facie case requires that the plaintiff prove by a preponderance of the evidence that he or she is within a protected class and that an impermissible factor played a motivating or substantial role in the employment decision." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Levy* v. *Commission on Human Rights & Opportunities*, supra, 236 Conn. 105–106.

"Often, a plaintiff cannot prove directly the reasons that motivated an employment decision. Nevertheless, a plaintiff may establish a prima facie case of discrimination through inference by presenting facts [that are] sufficient to remove the most likely bona fide reasons for an employment action . . . ." (Internal quotation marks omitted.) Id., 107. "From a showing that an employment decision was not made for legitimate reasons, a fact finder may infer that the decision was made for illegitimate reasons. It is in these instances that the *McDonnell Douglas-Burdine* model of analysis must be employed." Id.

The plaintiff claims that the court should have applied the mixed-motive/*Price Waterhouse* model of analysis because he established a prima facie case that the defendant's employment action was motivated by an improper reason, namely, religious discrimination. The trial court disagreed, as stated in a footnote in its memorandum of decision: "In [his] objection to the defendant's motion for summary judgment, the plaintiff argues that his employment discrimination claim is enti-

tled to the *Price Waterhouse* mixed-motive analysis. 'A mixed motive case exists when an employment decision is motivated by both legitimate and illegitimate reasons.' [Id.], 105. In his complaint and affidavit submitted with the objection to the motion for summary judgment, however, the plaintiff does not allege that his termination was the result of legitimate and illegitimate reasons, but rather alleges facts which demonstrate that the defendant's reason for termination was a pretext for illegal religious discrimination. Thus, the *McDonnell Douglas-Burdine* pretext model of analysis, instead of the *Price Waterhouse* mixed-motive analysis, applies." On the basis of our plenary review of the plaintiff's second revised complaint and his affidavit in opposition to the defendant's motion for summary judgment, we conclude that the plaintiff did not allege that he was fired for both legitimate and illegitimate reasons. We therefore agree with the trial court that the pretext/ *McDonnell Douglas-Burdine* model of analysis applied.

## II

The plaintiff's second claim is that even if the court properly determined that the pretext/*McDonnell Douglas-Burdine* model of analysis was appropriate, the court improperly found that the defendant had demonstrated the absence of any genuine issue of material fact as to whether the circumstances under which he was fired gave rise to an inference of discrimination. We do not agree.

Under the pretext/*McDonnell Douglas-Burdine* analysis, "the employee must first make a prima facie case of discrimination. . . . In order for the employee to first make a prima facie case of discrimination, the plaintiff must show: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position; (3) the plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination. . . . The employer may then rebut the prima facie case by stating a legitimate, non-discriminatory justification for the employment decision in question. . . . This burden is one of production, not persuasion . . . . The employee then must demonstrate that the reason proffered by the employer is merely a pretext and that the decision actually was motivated by illegal discriminatory bias." (Citations omitted; internal quotation marks omitted.) *Feliciano* v. *Autozone, Inc.*, 142 Conn. App. 756, 769–70, 66 A.3d 911 (2013), rev'd in part on other grounds, 316 Conn. 65, 111 A.3d 453 (2015); see also *Craine* v. *Trinity College*, 259 Conn. 625, 636–37, 791 A.2d 518 (2002).Circumstances contributing to a permissible inference of discriminatory intent under the fourth *McDonnell Douglas-Burdine* factor include (1) the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that

position; (2) the employer's criticism of the plaintiff's performance in ethnically degrading terms or invidious comments about others in the employee's protected group; (3) the more favorable treatment of employees not in the protected group; or (4) the sequence of events leading to the plaintiff's discharge or the timing of the discharge. See *Chambers* v. *TRM Copy Centers Corp.*, supra, 43 F.3d 37.

The defendant set forth the following facts in support of its motion for summary judgment.[5] The plaintiff was employed by the defendant from September, 2010, through August 3, 2012, to perform services at the apartments that are managed by WinnResidential. WinnResidential is a long-standing client of the defendant for which it provides cleaning and maintenance services at numerous locations. Initially, the plaintiff was hired as a cleaner/porter, but he was promoted to acting supervisor of a four person cleaning crew in September, 2011. He reported to Cifuentes, the defendant's operations manager for the Hartford area. Cifuentes was responsible for ensuring that the defendant's employees delivered superior services to its clients. He visited employees at their job sites one to three times a month. He also served as the liaison between the defendant and its clients with respect to complaints.

During the time that he was employed by the defendant, the plaintiff was the chaplain of his church, and Cifuentes knew of that affiliation. In March, 2012, the plaintiff recommended that the defendant hire Agosto, the pastor of the plaintiff's church. Cifuentes informed the plaintiff that if the defendant hired Agosto, the plaintiff could not treat him any differently than he treated other members of the cleaning crew, explaining that as a supervisor, the plaintiff had to treat all of the cleaners whom he supervised fairly and equally and not give any one of them preferential treatment, even if they were friends outside of work.

In May or early June, 2012, Cifuentes received complaints from members of the plaintiff's cleaning crew that the plaintiff was not distributing work assignments fairly. According to members of the crew, the plaintiff frequently assigned " 'easy' " jobs to Agosto and more demanding work to them. In addition, they complained that the plaintiff allowed Agosto to take extra breaks and to spend time talking with residents during work hours.[6] After Cifuentes learned of the complaints, he informed the plaintiff of them and reminded him that as a supervisor, he was responsible for keeping Agosto focused on work and minimizing his interaction with residents during work hours. Moreover, Cifuentes reminded the plaintiff that he should not treat Agosto more favorably than the other members of his crew.

In June, 2012, Cifuentes learned that Daisy Alejandro, assistant manager of the apartments, on a number of occasions had observed Agosto standing in the lobby

talking with residents when he should have been working, and that he was talking to the residents about church and God. Alejandro also heard complaints from members of the cleaning crew that the plaintiff assigned Agosto " 'easy' " jobs, while they were assigned more demanding work. John Deming, WinnResidential's superintendent for the apartments, witnessed similar conduct. According to Deming, the plaintiff and Agosto were not performing to WinnResidential's standards and their work was not being completed in a timely manner. Deming thought that the plaintiff was losing control over his crew and that he lacked the character to ensure that his crew was performing as it should.

In June, 2012, Alejandro, Deming, and Hagan met to discuss the performance of the defendant's employees. Hagan noted that the plaintiff was giving preferential treatment to Agosto by giving him easier tasks and allowing him to speak with residents rather than work. She was of the opinion that the plaintiff's treatment of Agosto was not conducive of a good working environment because a supervisor should treat each of his subordinates fairly and equally. The fact that the plaintiff was not treating the members of the crew fairly and equally led three members of the crew to complain to Alejandro. Hagan also was concerned about fair housing laws, which, she stated, do not permit religion to be discussed.

On June 14, 2012, Cifuentes met with the plaintiff alone to address Hagan's concerns about his performance as a supervisor. He gave the plaintiff a verbal warning and repeated his instructions that the plaintiff was to treat all members of his crew equally and to limit Agosto's nonwork-related interaction with residents. Cifuentes then met with the plaintiff and Agosto together. Cifuentes instructed Agosto to focus on work and minimize his interaction with residents during working hours and issued a written warning to Agosto. The warning form contained a space where an employee could state reasons why he disagreed with the warning received.[7] Agosto did not make a written statement and left the space blank.

On June 21, 2012, the plaintiff returned to his position as a cleaner. On June 22, 2012, Hagan sent an e-mail to Cifuentes about an incident involving Agosto and the plaintiff. Several tenants had complained that during a church service, Agosto read the names of residents who were in danger of being evicted due to poor housekeeping, nonpayment of rent, or were "bad" tenants. The plaintiff had helped Agosto compile the list of names. Hagan was concerned that the plaintiff and Agosto had accessed and misused private and confidential information that they saw in the management office. Hagan informed Cifuentes that the misuse of the information violated WinnResidential's professional conduct policy and its restrictions on the use of information by the

defendant's employees that they viewed or obtained while they were working. In addition, Alejandro had received complaints that the plaintiff had been "bad-mouthing" WinnResidential by telling residents that the "office doesn't do anything, and that's why nothing gets done . . . ." He also was warning nonresidents who were in the apartments when staff was planning to enter the apartments so that the nonresidents could leave before the staff arrived. In addition, the plaintiff was hanging out with a female who lives across the street from the apartments. Hagan subsequently requested that the defendant remove Agosto and the plaintiff from their positions at the apartments.[8] WinnResidential also did not want them to work at any of its other properties. Cifuentes confirmed Hagan's request on July 26, 2012.

On the basis of Hagan's request, as well as Cifuentes' continuing concerns about the plaintiff's and Agosto's job performance, Cifuentes determined that it was necessary to replace both men as soon as the defendant was able to hire qualified replacements. In his affidavit, Cifuentes attested that the defendant strives to provide the best possible service to its clients. It is the custom and practice of the defendant to comply, as soon as practicable, with any client's legitimate request to remove one of the defendant's employees from a job site. As a consequence of the defendant's hiring requirements,[9] it took the defendant approximately six weeks to hire qualified replacements for the plaintiff and Agosto.

On August 3, 2012, Cifuentes met with both Agosto and the plaintiff and terminated their employment. The employment warning notice that Cifuentes issued to the plaintiff on August 3, 2012, stated that the plaintiff had been warned several times regarding not only his own conduct as supervisor, but also the conduct of the crew members for whom he was responsible. The warning notice stated that the plaintiff's employment was terminated due to his ongoing conduct and performance issues, particularly on "[June 7, 2012, June 19, 2012, and July 30, 2012]." The plaintiff did not make a statement objecting to the warning or termination on the form in the space provided. See footnote 7 of this opinion.

Cifuentes attested that it is very important to the defendant that WinnResidential be satisfied with the quality of the defendant's employees. The defendant was concerned that by failing to accommodate Hagan's request that the plaintiff and Agosto be removed, the whole WinnResidential account could be put in jeopardy, which could have "cost [five] other people to lose their jobs."

The plaintiff opposed the defendant's motion for summary judgment by putting forth facts that are for the most part consistent with those presented by the defendant. The plaintiff attested that when the defendant

hired Agosto, Cifuentes told the plaintiff that, while at work, he could not refer to Agosto as "pastor" or give him the respect ordinarily given to a pastor. Also, Hagan initiated a meeting with Agosto and the plaintiff because she had been advised by members of the plaintiff's cleaning crew that he was assigning Agosto easier work. On June 14, 2012, Hagan told the plaintiff that he needed to treat Agosto the same way he treated other workers and not treat him with the respect of a pastor when they were at work. Hagan brought Agosto into the meeting and gave him a warning about speaking to residents while at work and using terms such as "God bless." The plaintiff acknowledged that Hagan sent Cifuentes an e-mail about information she had received from Alejandro concerning Agosto's reading the names of residents at church. Hagan assumed that the plaintiff had given Agosto confidential information. The plaintiff denied that Agosto read any names of residents at church or that he had access to confidential information that he gave to Agosto.

The plaintiff further attested that the Cintrons made false complaints to Alejandro that the plaintiff had told residents that the office "doesn't do anything, and that's why nothing gets done," and that the plaintiff spends time on his phone talking to female residents. The plaintiff denied the complaints. He accused the Cintrons of making the false complaints in retaliation for Agosto's having reprimanded them for playing music at an inappropriate time during church. The plaintiff, however, acknowledged that Hagan requested that Cifuentes remove him from his position as a cleaner/porter.

With respect to the August 3, 2012 meeting when Cifuentes fired him, the plaintiff attested: "Cifuentes called a meeting to officially [terminate] Mr. Agosto from his position as cleaner/porter while I was present as his supervisor. When I referred to Mr. Agosto as 'pastor' during this meeting, Mr. Cifuentes got immediately angry and immediately removed me from my position as well." Finally, the plaintiff denied that he had any performance issues during the time of his employment with the defendant and stated that Riddle previously had praised his appointment as a temporary supervisor.

In applying the pretext/*McDonnell Douglas-Burdine* model to the facts presented by the parties, the court noted that the plaintiff alleged that he was a member of a protected class, was qualified for his position and was fired from his position due to his use of the term "pastor" when referring to Agosto, his coworker, in the presence of Cifuentes. The plaintiff asserted that because the defendant disapproved of its employees using religious terms such as "pastor" to refer to one another while they were at work and because the defendant was aware of the plaintiff's status as chaplain in Agosto's church, the plaintiff's termination from employment occurred under circumstances giving rise

to an inference of religious discrimination. The court, however, found that the facts failed to establish that the defendant harbored any bias that created an inference of discrimination and that there were no genuine issues of material fact in that regard.

On appeal, the plaintiff argues that the court erred in concluding that there were no genuine issues of material fact because trial courts should be cautious when granting summary judgment in employment discrimination cases when an employer's intent is in question. See *Miller* v. *Edward Jones & Co.*, 355 F. Supp. 2d 629, 636 (D. Conn. 2005) (United States Court of Appeals for the Second Circuit cautioned district courts that direct evidence of intent rarely found). He argues that evidence of an employer's discriminatory intent will rarely be found and that affidavits must be carefully scrutinized for circumstantial proof, which, if believed, shows discrimination. Id. Moreover, intent raises an issue of material fact that cannot be decided on a motion for summary judgment. *Picataggio* v. *Romeo*, 36 Conn. App. 791, 794, 654 A.2d 382 (1995). He concedes, however, that the quantum of evidence produced by the defendant outweighed his evidence, but he insists that he put forth some evidence that gives rise to an inference of religious discrimination on the part of the defendant.

In its brief on appeal, the defendant countered the plaintiff's claim of prima facie discrimination with a number of nondiscriminatory reasons it had to terminate the plaintiff's employment, none of which had anything to do with his religion or church membership: (1) as supervisor of a cleaning crew, the plaintiff elevated Agosto above his coworkers, which created morale problems; (2) WinnResidential reasonably believed and communicated to the defendant that the plaintiff helped Agosto obtain confidential information about the status of certain residents that Agosto then published in his church, (3) the plaintiff disparaged WinnResidential to its tenants; and (4) WinnResidential asked the defendant to replace the plaintiff who, as a supervisor, elevated Agosto above his fellow workers, helped Agosto obtain confidential information that he published, and disparaged WinnResidential.

On appeal, the plaintiff argues that he presented sufficient evidence from which a reasonable fact finder could conclude that the basis of the defendant's motivation to terminate his employment was his religion. The plaintiff's argument is founded on his view of the time and manner in which Cifuentes fired him. In the plaintiff's mind, Cifuentes met with the plaintiff and Agosto on August 3, 2012, for the purpose of firing only Agosto. Thereafter, when the plaintiff referred to Agosto as pastor, Cifuentes became angry and fired him as well. In other words, religion was Cifuentes' motivating factor at the time he fired the plaintiff. See *Levy* v. *Commission on Human Rights & Opportunities*, supra, 236

Conn. 106 (critical fact whether impermissible motive was factor at time termination decision was made). The plaintiff contends that Cifuentes' action directly reflects discrimination on the basis of the plaintiff's religion and permits the fact finder to conclude that the adverse employment consequence was the result of an impermissible factor. He also argues that there is nothing in the record indicating that he was warned several times about his own behavior and that of members of his crew, and there is nothing in the record to confirm that he gave Agosto easier work assignments or that he permitted him to socialize with residents rather than work.

To bolster his position that he established a prima facie case of discrimination, the plaintiff cites Hagan's affidavit, in which she attests that she had heard reports that in the workplace, the plaintiff referred to Agosto as "pastor." She attested to her belief that the use of such terms is not conducive to a good working environment. Hagan's attestations, however, go to her reasons for not wanting the plaintiff and Agosto to work at the apartments or any site managed by WinnResidential. Significantly, Hagan was employed by WinnResidential, not by the defendant. She, therefore, was not the defendant's agent.

"[R]emarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark." *Tomassi* v. *Insignia Financial Group, Inc.*, 478 F.3d 111, 115 (2d Cir. 2007), abrogated in part on other grounds by *Gross* v. *FBL Financial Services, Inc.*, 557 U.S. 167, 177–78, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009). Cifuentes was requested and motivated to fire both the plaintiff and Agosto in June, 2012, when he learned that WinnResidential did not want either man to work at the apartments because the plaintiff gave Agosto preferential treatment, they took confidential information from the office and published it, the plaintiff denigrated WinnResidential, and he helped nonresidents avoid detection. Cifuentes' job was to ensure that the defendant's employees performed to the satisfaction of its clients. If WinnResidential was not happy with the plaintiff and Agosto, the defendant risked losing the account if it did not fire them.

In responding to the plaintiff's arguments on appeal, the defendant has undertaken an analysis of the *Chambers* factors. "Circumstances contributing to a permissible inference of discriminatory intent may include [1] criticism of the plaintiff's performance in [discriminatory] terms . . . invidious comments about others in the employee's protected group . . . [2] the more favorable treatment of employees not in the protected group . . . or [3] the sequence of events leading to the

plaintiff's discharge . . . or the timing of the discharge . . . ." (Citations omitted.) *Chambers* v. *TRM Copy Centers Corp.*, supra, 43 F.3d 37. "Since the court, in deciding a motion for summary judgment, is not to resolve issues of fact, its determination of whether the circumstances giv[e] rise to an inference of discrimination must be a determination of whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive." (Internal quotation marks omitted.) Id., 38. "In the absence of any affirmative evidence of a causal connection between [the defendant's agent's] discriminatory animus toward the plaintiff and the defendant's termination of her employment, no inference of the defendant's discriminatory intent can be made." *Feliciano* v. *Autozone, Inc.*, 316 Conn. 65, 80, 111 A.3d 453 (2015).

As to the first *Chambers* factor, the defendant represents that Cifuentes was the only agent of the defendant who interacted with the plaintiff and did so in a professional manner. In his affidavit, Cifuentes attested that he informed the plaintiff of the complaints he had received regarding the plaintiff's preferential treatment of Agosto, that the plaintiff needed to treat all members of the crew equally, and that it was his responsibility to keep Agosto focused on work and to minimize his interactions with tenants. There are no religious references in Cifuentes' interaction with the plaintiff. In objecting to the motion for summary judgment, the plaintiff did not take issue with Cifuentes' affidavit or otherwise produce countervailing facts. The plaintiff also did not take issue with Cifuentes' description of the June 14, 2012 meeting with the plaintiff and Agosto together and when Cifuentes gave Agosto a written warning. Even if, as the plaintiff claims, Cifuentes told Agosto not to talk to residents about religion, that admonishment is in keeping with the defendant's policy that employees limit their interaction with residents during working time. Analysis of this factor does not tip in the plaintiff's favor.

The second *Chambers* factor is whether the defendant treated employees who are not members of the plaintiff's protected group more favorably. The plaintiff presented no evidence that the defendant treated others more favorably than it treated the plaintiff or Agosto. It was the plaintiff who gave Agosto more favorable treatment than other members of the cleaning crew he supervised. This factor weighs against the plaintiff.

As to the sequence of events leading to the plaintiff's employment termination, Cifuentes made the decision to fire him on June 26, 2012, two weeks after Cifuentes met with the plaintiff and Agosto to discuss their deficient performances. Cifuentes made the decision to fire them after he heard from Hagan that residents had reported that the names of residents were read in

church, and that the plaintiff was telling tenants that the "office doesn't do anything, and that's why nothing gets done." Hagan requested that the defendant remove the plaintiff and Agosto from the apartments and not place them at any location managed by WinnResidential. On June 26, 2012, Cifuentes clarified with Hagan that he should replace the men as soon as qualified employees were found.

The plaintiff's assertion that Cifuentes' conduct when he fired him and Agosto raised an inference of discrimination is unsupported by the record. "A mere assertion of fact in the affidavit of the party opposing summary judgment is not enough to establish the existence of a material fact that, by itself, defeats a claim for summary judgment." *Campbell* v. *Plymouth*, 74 Conn. App. 67, 83, 811 A.2d 243 (2002). In his affidavit, Cifuentes stated that he met with the plaintiff and Agosto on August 3, 2012, "and told them that they were terminated due to ongoing conduct and performance issues." By contrast, the plaintiff stated that during the meeting "[w]hen I referred to Mr. Agosto as 'pastor' during this meeting, Mr. Cifuentes got immediately angry and immediately removed me from my position as well." Neither Agosto nor the plaintiff referenced Cifuentes having gotten angry in the employee's remarks section of their August 3, 2012 warning records. This factor does not weigh in favor of an inference of a discriminatory motive.

Finally, the defendant argues that the "same-actor inference" negates any inference of discrimination because Cifuentes hired and fired Agosto within a short period of time. "[W]here the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire." (Internal quotation marks omitted.) *Schnabel* v. *Abramson*, 232 F.3d 83, 91 (2d Cir. 2000). "The premise underlying this inference is that if the person who fires an employee is the same person that hired him, one cannot logically impute to that person an invidious intent to discriminate against the employee. Such an inference is strong where the time elapsed between the events of hiring and firing is brief. . . . [T]he same-actor inference is permissive, not mandatory, [but] it applies with greatest force where the act of hiring and firing are not significantly separated in time . . . ." (Citations omitted; internal quotation marks omitted.) *Saliga* v. *Chemtura Corp.*, Docket No. 12-cv-832 (VAB), 2015 U.S. Dist. LEXIS 133135, *26 (D. Conn. October 1, 2015). At the time Cifuentes hired Agosto, he knew of his religion and relationship to the plaintiff. He hired and fired Agosto within approximately five months. What happened in the interim is that Cifuentes received reports from WinnResidential personnel that the plaintiff gave Agosto preferential treatment on the cleaning crew, provided him with confidential information about tenants from the apartment office, and talked negatively

about WinnResidential. The defendant argues that these are reasons not to draw an inference of religious discrimination on the defendant's part when it terminated the plaintiff's employment.

We find the defendant's analysis of the underlying facts and *Chambers* analysis persuasive that the trial court properly determined that there were no genuine issues of material fact that the defendant harbored bias or a discriminatory intent on the basis of the plaintiff's religion. We emphasize the fact that the defendant hired the plaintiff as a cleaner/porter in 2010 and promoted him to acting crew supervisor in 2011. The plaintiff has not pointed to any facts by which one could infer that the defendant discriminated against him on the basis of his religion and church membership prior to the hiring of Agosto, the plaintiff's pastor. The defendant's complaints about the plaintiff's performance arose when he gave Agosto preferential treatment at the expense of other members of the cleaning crew and permitted Agosto to interact with tenants during working hours. For all of the foregoing reasons, the plaintiff's claim fails.

### III

The plaintiff's third claim is that the court improperly granted summary judgment on his retaliation claim because the defendant failed to meet its burden to show that there were no genuine issues of material fact as to whether the plaintiff engaged in a protected activity. We disagree.

In count two of his second revised complaint, the plaintiff alleged that the defendant retaliated against him in violation of § 46a-60 (a) (4). In count two the plaintiff realleged his claims of employment discrimination and, among other things, that he held a bona fide religious belief and was chaplain at the Tabernacle of Reunion Church where Agosto was the pastor. He alleged that the defendant's agents were aware of his religious beliefs and relationships and discriminated against him on the basis of his religion and "retaliated against [him] by discharging him for practicing his religious beliefs as more fully" alleged in his complaint.

Section 46a-60 (a) provides in relevant part: "It shall be a discriminatory practice in violation of this section . . . (4) [f]or any . . . employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any discriminatory employment practice or because such person has filed a complaint or testified or assisted in any proceeding under section 46a-82, 46a-83 or 46a-84 . . . ."

The trial court found that the plaintiff alleged that he had engaged in protected activity when he openly called Agosto "pastor" in Cifuentes' presence. The court concluded that the use of the term "pastor" in defiance of the defendant's request that he not do so at work is

neither a formal nor informal protest of discrimination, but rather a continuation of a behavior that the defendant advised the plaintiff against. The plaintiff's actions, therefore, do not fall under the category of activity protected by § 46a-60 (a) (4), and he failed to establish a prima facie case of retaliation under the act.

A prima facie case of retaliation requires a plaintiff to show (1) that he or she participated in a protected activity that was known to the defendant, (2) an employment action that disadvantaged the plaintiff, and (3) a causal relation between the protected activity and the disadvantageous employment action. See *Hebrew Home & Hospital, Inc.* v. *Brewer*, 92 Conn. App. 762, 770, 886 A.2d 1248 (2005). "The term protected activity refers to action taken to protest or oppose statutorily prohibited discrimination." (Internal quotation marks omitted.) *Jarrell* v. *Hospital for Special Care*, 626 Fed. Appx. 308, 311 (2d Cir. 2015). "The law protects employees in the filing of formal charges of discrimination as well as in the making of informal protests of discrimination, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of coworkers who have filed formal charges." (Internal quotation marks omitted.) *Matima* v. *Celli*, 228 F.3d 68, 78–79 (2d Cir. 2000).

On appeal, the plaintiff claims that he alleged that he participated in a protected activity by continuing to refer to Agosto as "pastor" despite having been told that he should not do so while the two were working. The plaintiff, however, did not allege that he participated in a protected activity by formally or informally protesting the defendant's alleged religious discrimination.

As previously stated, Practice Book § 17-49 provides that summary judgment "shall be rendered forthwith if the *pleadings*, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Emphasis added.) "[I]t [is] incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists." (Internal quotation marks omitted.) *Dinnis* v. *Roberts*, 35 Conn. App. 253, 260, 644 A.2d 971, cert. denied, 231 Conn. 924, 648 A.2d 162 (1994). "[M]aterial facts are those that will make a difference in the case, and they must be pleaded." *McCann Real Equities Series XXII, LLC* v. *David McDermott Chevrolet, Inc.*, 93 Conn. App. 486, 511, 890 A.2d 140, cert. denied, 277 Conn. 928, 895 A.2d 798 (2006). "The purpose of a complaint . . . is to limit the issues at trial, and it is calculated to prevent surprise. . . . It must provide adequate notice of the facts claimed and the issues to be tried." (Citation omitted; internal quotation marks

omitted.) *New Milford Savings Bank* v. *Roina*, 38 Conn. App. 240, 244, 659 A.2d 1226, cert. denied, 235 Conn. 915, 665 A.2d 609 (1995). Even a generous reading of the plaintiff's allegations of retaliation do not put the defendant or the court on notice that he engaged in a protected activity under § 46a-60 (a) (4). We agree with the trial court that the facts alleged by the plaintiff in his retaliation claim do not rise to the level of a protected activity.

Moreover, the plaintiff failed to raise a genuine issue of material fact. The plaintiff acknowledges that he did not formally protest the defendant's telling him not to refer to Agosto as "pastor." He claims on appeal, however, that his reference to Agosto as "pastor" at the time Cifuentes fired Agosto constituted an informal complaint. The plaintiff, however, did not document his protest in the employee's remarks section of the employee warning record. He also did not attest to lodging an informal protest in his affidavit filed in opposition to the defendant's motion for summary judgment.

"[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. . . . A party opposing a motion for summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Citation omitted; internal quotation marks omitted.) *Altfeter* v. *Naugatuck*, supra, 53 Conn. App. 801. Because he did not allege that he had engaged in a protected activity or present evidence that he formally or informally protested the defendant's alleged religious discrimination, his claim on appeal fails. The court, therefore, properly granted summary judgment on count two of the second revised complaint.[10]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] See *Levy* v. *Commission on Human Rights & Opportunities*, 236 Conn. 96, 104–109, 671 A.2d 349 (1996) (differentiating disparate employment treatment models).

[2] The court considered all of the exhibits submitted by both of the parties, even though they may not have been authenticated, because there was no objection to them.

[3] On appeal, the plaintiff takes issue with the court's finding that there were no genuine issues of material fact, but he does not take issue with the court's summary of the underlying facts.

[4] The plaintiff's brief on appeal fails to address the court's granting of summary judgment with respect to his claim of aiding and abetting. We, therefore, consider any claim that the court improperly granted summary judgment as to count three abandoned. See, e.g., *Charles* v. *Mitchell*, 158 Conn. App. 98, 102 n.4, 118 A.3d 149 (2015) (failure to brief claim).

[5] Attached to the memorandum of law were numerous exhibits, including some of the plaintiff's employment records and affidavits from Cifuentes, Hagan, Daisy Alejandro and Joseph Deming of WinnResidential.

[6] To ensure the delivery of efficient, reliable and high quality services, Cifuentes attested, the defendant instructed its employees to limit their interaction with the tenants and employees of clients at work sites.

[7] That section of the form states that "[t]he absence of any statement on the part of the EMPLOYEE indicates his/her agreement with the report

as stated."

[8] In her affidavit that was submitted with the defendant's motion for summary judgment, Hagan attested in part: "In or about June of 2012, staff performance was discussed among . . . Deming . . . Alejandro . . . and me. It was brought to my attention that [the plaintiff] gave preferential treatment to Agosto. He called him pastor in the workplace. We did not want him to do that because it was a title of respect and authority while [the plaintiff] was to be the supervisor. It was also not conducive to a good working environment because the supervisor should be treating each of his subordinates fairly and equally—it was creating a problem as the other three workers were complaining to [Alejandro]. I also was concerned about Fair Housing Laws where religion was not to be discussed at all. It was also brought to my attention that Agosto engaged in excessive interaction [apartment] residents during working hours when he should be working, not socializing.  .  .  .  It was also reported to me that Agosto was talking to residents about church, religion and God when he was to be working."

[9] The defendant requires potential employees to undergo drug testing and background checks.

[10] To be clear, the resolution of the religious discrimination claim in this case is limited to the alleged facts. The plaintiff's claim does not turn on the use of religious titles and honorifics in the workplace, and we offer no opinion in that regard.

———————————————————